# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #051

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **15th day of October, 2014**, are as follows:

**BY JOHNSON, C.J.**:

2014-KK-0282      STATE OF LOUISIANA v. MAURICE ADDISON HAWLEY (Parish of Bossier)
                  (Driving While Under the Influence)

                  For this reason, we find the court of appeal erred in applying
                  Melendez-Diaz and vacating Mr. Hawley's conviction. We hereby
                  reverse the ruling of the court of appeal and reinstate
                  defendant's conviction.
                  REVERSED AND RENDERED.

SUPREME COURT OF LOUISIANA

NO. 2014-KK-0282

STATE OF LOUISIANA

VERSUS

MAURICE ADDISON HAWLEY

ON SUPERVISORY WRITS TO TWENTY-SIXTH JUDICIAL
DISTRICT COURT FOR THE PARISH OF BOSSIER


**JOHNSON, Chief Justice**

Maurice Addison Hawley was charged with driving under the influence after a breath test demonstrated his blood alcohol concentration was above the legal limit. The test was conducted using an Intoxilyzer 5000 breathalyzer. We granted this writ application to determine whether the state's introduction into evidence of the certification form attesting to the inspection and maintenance of the Intoxilyzer 5000 machine, and the certification form attesting to the qualifications of the maintenance technician who inspected, maintained and certified the machine, without producing the testimony of the technician, violated Mr. Hawley's Sixth Amendment right to confrontation. For the following reasons, we hold these forms are nontestimonial, and thus they are not subject to Confrontation Clause requirements. We therefore reverse the ruling of the court of appeal and reinstate Mr. Hawley's conviction.

## FACTS AND PROCEDURAL HISTORY

On February 19, 2012, Mr. Hawley was stopped by a Louisiana State Trooper for improper lane use and speeding. After initial investigation, he was arrested for DUI. Mr. Hawley agreed to provide a breath sample for chemical

analysis, which was conducted using an Intoxilyzer 5000 breathalyzer machine. The test showed a blood alcohol concentration of .144, a level above the statutory presumption of intoxication. Mr. Hawley was charged by Bill of Information with driving while under the influence, first offense, in violation of La. R.S. 14:98. This statute defines the crime of operating a vehicle while intoxicated as operating a motor vehicle when the operator's blood alcohol concentration is .08 or more.[1] For purposes of proving Mr. Hawley's blood alcohol concentration exceeded this statutory limit, the state intended to introduce three exhibits at Mr. Hawley's trial:

> S-1: Intoxilyzer 5000 "Machine Recertification Form"
> S-2: "Maintenance Technician Qualification Form"
> S-3: Intoxilyzer 5000 breath test printout

Exhibit S-1, "Certificate of Inspection Machine Recertification Form," states:

> This is to certify that Instrument # 68-012946 Intoxilyzer 5000 is an approved instrument for use in Breath-alcohol Testing and is certified to be in proper functioning condition on this 7th day of February, 2012.
>
> This certificate is prima facie evidence of the proper functioning of the instrument.
>
> The known alcohol standard used in calibration of the instrument was tested and found to be within the acceptable tolerance range of + .010g% according to rules and regulations promulgated pursuant to LRS 32:663.
>
> Known value     .100
> Instrument read  .097

The certificate is signed by Cory D. Thompson, Breath Analysis Instructor Specialist, Louisiana State Police Applied Technology Unit, Certified Permit No. 8. Exhibit S-2 includes the "Intoxilyzer 5000 Certification Card" for Mr. Thompson under Permit No. 0008, and states that "this individual has met all requirements for qualification to perform maintenance and inspection on instruments indicated on the

---

[1] La. R.S. 14:98(A)(1)(b).

true copy of individual's permit issued by the Department of Public Safety...." Exhibit S-3 is the printout from the Intoxilyzer 5000, reflecting that the analysis of Mr. Hawley's breath sample showed a blood alcohol concentration of .144.

Prior to trial, Mr. Hawley filed a "Notice"[2] objecting to all hearsay evidence, including "machine certification forms," "machine recertification forms," and any forms or certificates "of any kind which are discussed or identified in LSA-R.S. 15:499 through LSA-R.S. 15:501," Louisiana's notice and demand statutes. The Notice also served to advise that Mr. Hawley would object if the state attempted to introduce any such evidence if he was not allowed to exercise his constitutional right to confront and cross examine the person who made the statements contained in such documents.

On the date of trial, the court treated Mr. Hawley's Notice as a motion in limine seeking to exclude the state's evidence based on a Confrontation Clause violation. The trial court denied the motion, finding no constitutional violation. Due to this ruling, Mr. Hawley chose to enter a guilty plea pursuant to *State v. Crosby*,[3] reserving his right to appeal the trial court's ruling. Mr. Hawley then sought review in the court of appeal.

The court of appeal granted Mr. Hawley's writ and vacated his conviction.[4] Relying on the United States Supreme Court's opinion in *Melendez-Diaz v. Massachusetts*,[5] the court noted that forensic reports/certificates prepared for trial qualify as testimonial statements and are subject to the Confrontation Clause, and

---

[2] This pleading is fully entitled: "Defendant's Notice of Objection to all Hearsay, Including Hearsay contained in Certificates and Other Documents; Defendant's Notice that he is not Waiving his Right to Confront and Cross Examine Witnesses and that he will Assert his Right to Confront and Cross Examine all Witnesses."

[3] 338 So. 2d 584 (La. 1976).

[4] *State v. Hawley*, 48,835 (La. App. 2 Cir. 10/10/13) (unpublished).

[5] 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009).

3

therefore found the trial court erred in admitting the documents without the presence of the analyst. The court also noted that Mr. Hawley had timely filed a demand for the analyst's presence, and that notice and demand statutes are permissible under the Confrontation Clause.

The state filed the instant writ application, asserting S-1 and S-2 are not testimonial statements requiring an analyst to testify in order to introduce the forms into evidence.[6] We granted the state's writ application to decide whether introduction of the Intoxilyzer 5000 "Machine Recertification Form" (S-1) and the "Maintenance Technician Qualification Form" (S-2) into evidence, without requiring the state to produce the testimony of the technician who inspected and certified the machine and prepared the recertification form, violated Mr. Hawley's constitutional right of confrontation.[7]

**DISCUSSION**

Because our resolution of this matter requires interpretation of constitutional issues involving the Confrontation Clause of the Sixth Amendment, our review is *de novo*.[8]

La. R.S. 14:98 provides a legal presumption of intoxication if the operator's blood alcohol concentration is "0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood."[9] For purposes of establishing this presumption, the state sought to introduce S-1 and S-2 into evidence without testimony. These documents were formulated pursuant to certain statutory

---

[6] S-3, the Intoxilyzer 5000 breath test printout, is not at issue in this case. The state acknowledges that S-3 cannot be admitted into evidence without the analyst's testimony. The state asserts the analyst is the state trooper who conducted the test, and he was subpoenaed and available to testify at Mr. Hawley's trial.

[7] *State v. Hawley*, 14-0282 (La. 4/11/14), 138 So. 3d 611.

[8] *See State v. Golston*, 10-2804 (La. 7/1/11), 67 So. 3d 452.

[9] La. R.S. 14:98(A)(1)(b).

4

requirements.

In order for a chemical analysis of a person's breath to be considered valid, it must have been performed according to methods approved and promulgated by the Department of Public Safety and Corrections ("Department").[10] The rules promulgated by the Department include operator qualifications, instructor qualifications, maintenance technician qualifications, mandatory maintenance and repair schedule, approved manufacturers of simulator solutions, and procedures for using the Intoxilyzer 5000.[11]

With respect to inspection of the Intozilyzer 5000 and preparation of the recertification form, the rules provide:

> At least once every four months [after initial approval] for the Intoxilyzer 5000,…each individual instrument shall be inspected, checked, and certified by the…breath analysis instructor specialist…of the Applied Technology Unit and a recertification form shall be maintained in the Applied Technology Unit. A copy of this certificate may be filed with clerk of the applicable court in the respective parish in which each device is used for blood/breath testing, and this copy shall be prima facie evidence as to the proper working order of the instrument. The inspecting…breath analysis instructor specialist['s]…permit number shall also be affixed to this certificate.[12]

In accordance with La. R.S. 32:663, the Department also issued qualifications required of individuals to perform maintenance and inspection of the Intoxilyzer 5000.[13] After an individual has qualified based on the stated standards, he is certified to perform maintenance and inspection by the Department and issued a permit stating such.[14] This permit serves as prima facie evidence of the individual's

---

[10] La. R.S. 32:663(A)(1).

[11] *See* La. Admin. Code Title 55, Part I, §501 *et seq.*

[12] La. Admin. Code, Title 55: Part I, § 501(A).

[13] *See* La. Admin. Code, Title 55: Part I, § 507.

[14] La. Admin. Code, Title 55: Part I, § 501(B).

qualification to perform such maintenance.[15]

According to La. R.S. 32:662.1,[16] the "Machine Recertification Form" (S-1) and the "Maintenance Technician Qualification Form" (S-2), both made in accordance with the provisions of La. R.S. 32:663, are admissible as prima facie evidence. The issue we must resolve is whether the admission of S-1 and S-2 into evidence without requiring the state to introduce the testimony of the technician who inspected and certified the machine, violated Mr. Hawley's Sixth Amendment right to confront the technician. After reviewing the record and considering the law and arguments of the parties, we hold that the "Machine Recertification Form" (S-1) and the "Maintenance Technician Qualification Form" (S-2) are nontestimonial and therefore introduction of these documents into evidence without testimony does not invoke Confrontation Clause requirements.

The defendant makes an argument based on the Sixth Amendment to the United States Constitution which provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." That portion of the Sixth Amendment is commonly referred to as the Confrontation Clause.[17]

The Supreme Court's interpretation of the Confrontation Clause has continuously evolved. In *Ohio v. Roberts*,[18] the Court held that out-of-court

---

[15] *Id.*

[16] La R.S. § 32:662.1 provides: In all criminal cases where intoxication is an issue, any certificate or writing made in accordance with the provisions of R.S. 32:663, including but not limited to intoxilyzer instrument recertification forms, and other certificates or writings made with respect to the chemical analyses of a person's blood, urine, breath, or other bodily substance, shall be admissible as evidence.

[17] We note that the Louisiana Constitution grants defendants a similar right in Article I, § 16 which provides, in part: "An accused is entitled to confront and cross-examine the witnesses against him, to compel the attendance of witnesses, to present a defense, and to testify in his own behalf."

[18] 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed. 2d 597 (1980).

statements by witnesses who are unable to testify can be admitted into evidence if a court determines that the evidence falls within a hearsay exception or has "particularized guarantees of trustworthiness."[19] Almost twenty-five years later, the Court shifted its inquiry from whether the evidence is "reliable" to whether the evidence is "testimonial." In *Crawford v. Washington,*[20] the Court held that prosecutors could not use the "testimonial statements" of a witness who did not appear at trial unless he was unavailable to testify and the defendant had a prior opportunity for cross-examination.[21] The Court explained:

> The text of the Confrontation Clause reflects this focus. It applies to "witnesses" against the accused-in other words, those who "bear testimony." "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact."An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.[22]

The Court described a "core class" of testimonial statements covered by the Confrontation Clause:

> Various formulations of this core class of testimonial statements exist: ex parte in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.[23]

But the Court specifically declined to "spell out a comprehensive definition of

---

[19] *Roberts*, 448 U.S. at 66.

[20] 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed. 2d 177 (2004).

[21] *Crawford*, 541 U.S. at 54

[22] *Id*. at 51. (Internal citations omitted).

[23] *Id.* at 51-52. (Internal citations omitted).

'testimonial.'"[24] Subsequent Supreme Court cases have served to further clarify whether evidence is "testimonial."

In *Davis v. Washington*,[25] the Court considered when statements made to law enforcement personnel during a 911 call or at a crime scene are "testimonial." The Court focused on the "primary purpose" of the interrogation and held:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that *the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution*.[26]

In *Melendez-Diaz*, the Court again focused on "purpose" to find "certificates of analysis" prepared by forensic analysts identifying a substance found in defendant's possession as cocaine, and submitted into evidence at defendant's drug trafficking trial, to be testimonial.[27] The certificates were sworn to before a notary public by analysts at the State Laboratory Institute, as required under Massachusetts law.[28] The Court explained:

> The documents at issue here, while denominated by Massachusetts law "certificates," are quite plainly affidavits: "declaration[s] of facts written down and sworn to by the declarant before an officer authorized to administer oaths." They are incontrovertibly a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." The fact in question is that the substance found in the possession of Melendez-Diaz and his codefendants was, as the prosecution claimed, cocaine-the precise testimony the analysts would be expected to provide if called at trial. The "certificates" are functionally identical to live, in-court testimony, doing "precisely what a witness does on direct

---

[24] *Id*. at 68.

[25] 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed. 2d 224 (2006).

[26] 547 U.S. at 822. (Emphasis added).

[27] *Melendez-Diaz*, 557 U.S. at 310-11.

[28] *Id*. at 308.

examination."[29]

More recently, in *Bullcoming v. New Mexico*,[30] the Court reiterated that an analyst's certification prepared in connection with a criminal investigation or prosecution is testimonial and therefore within the compass of the Confrontation Clause.[31] The specific issue considered in *Bullcoming* was whether such a certification could be introduced into evidence through the testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification."[32] The Court held that the "surrogate testimony" did not meet the requirements of the Confrontation Clause.[33]

Considering this Supreme Court jurisprudence, we start our analysis by stating that only "testimonial" statements cause a declarant to be a witness within the meaning of the Confrontation Clause. Accordingly, the crucial question we must answer is whether the statements contained within S-1 and S-2 are "testimonial" in nature.

In finding these certification forms to be "testimonial," the court of appeal cited *Melendez-Diaz* for the proposition that "forensic reports/certificates prepared for trial qualify as testimonial statements and are subject to the Confrontation Clause." We find the court's reliance on *Melendez-Diaz* to be misplaced. The court of appeal's application of *Melendez-Diaz* to the facts of this case indicates an overly-broad reading of its holding. We are not bound by the Court's holding in *Melendez-Diaz* because, unlike the certificates in *Melendez-Diaz*, or those in *Bullcoming*, S-1

---

[29] *Id*. at 310-11. (Internal citations omitted).

[30] – U.S. –, 131 S.Ct. 2705, 180 L.Ed. 2d 610 (2011).

[31] *Bullcoming*, 131 S.Ct. at 2713-14.

[32] *Id*. at 2710.

[33] *Id*.

and S-2 were not prepared for the primary purpose of providing evidence in a criminal case. *In Melendez-Diaz,* the drug analysis certificates provided direct proof of an element of the defendant's drug trafficking offense. Similarly, *Bullcoming* involved a DWI case and the forensic laboratory report certified that defendant's blood-alcohol concentration was above the legal threshold.[34] The information contained in S-1 and S-2 do not provide any information regarding Mr. Hawley's blood alcohol concentration, nor otherwise establish an element of the offense of driving while under the influence.

S-1 was prepared by Cory Thompson, the technician who inspected and maintained the Intoxilyzer 5000 used to test Mr. Hawley's breath sample. S-1 merely certifies the reliability of the Intoxilyzer 5000 and was prepared on February 7, 2012, twelve days before Mr. Hawley was arrested. The form reflects objective facts that were observed by the technician at the time of their recording in order to establish that the Intoxilyzer 5000 would produce accurate results, rather than to prove that Mr. Hawley was intoxicated. Thus, the machine recertification form does not directly inculpate Mr. Hawley or prove an essential element of the charges against him. Similarly, S-2 simply states that Cory Thompson was certified by the Department of Public Safety and Corrections to perform maintenance and inspect the Intoxilyzer 5000. Nothing in S-2 proves an element of Mr. Hawley's DUI offense.

Louisiana law requires that the Intoxilyzer 5000 be "inspected, checked, and certified" by a qualified technician at least once every four months and that a recertification form be maintained.[35] Thus, when S-1 was created, its primary

---

[34] *Bullcoming*, 131 S.Ct. at 2709.

[35] La. Admin. Code Title 55, Part I, §501.

purpose was to establish that the Intoxilyzer 5000 was in compliance with administrative regulations in effect at the time. S-2 was created to establish the technician was qualified pursuant to regulations. Thus, the primary purpose of S-1 and S-2 was not to determine Mr. Hawley's blood alcohol concentration, but rather to show strict compliance with the promulgated procedures. The certificates served a purpose at the time they were created, regardless of whether they were utilized in a future prosecution. To require the testimony of an individual as far removed from the prosecution as the inspector and calibrator of the Intoxilyzer would dramatically expand the holding of *Melendez-Diaz*. The majority in *Melendez-Diaz* noted this distinction:

> Contrary to the dissent's suggestion, ... we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the… accuracy of the testing device, must appear in person as part of the prosecution's case…. Additionally, documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records."[36]

In sum, we hold that the machine recertification form (S-1) and the maintenance technician qualification form (S-2) do not fall within the "core class" of testimonial statements covered by the Confrontation Clause as described in *Crawford*. While certificates of drug analysis were offered as direct proof of an element of the offense charged in *Melendez–Diaz*, and reports certifying proof of defendant's blood alcohol concentration were offered as proof of an element of the offense in *Bullcoming*, S-1 and S-2 do not offer direct proof of Mr. Hawley's guilt, and only serve to establish the admissibility or credibility of the evidence of his guilt, the Intoxilyzer 5000 breath test printout (S-3). The state intended to introduce S-3 through the testimony of the state trooper who conducted Mr. Hawley's breath test.

---

[36] *Melendez-Diaz*, 557 U.S. at 311 n. 1.

Finally, we address Mr. Hawley's assertion that the admission of the certificates into evidence without requiring the state to produce the technician's testimony violated the protections established in Louisiana's notice and demand statutes.[37] Through a series of statutes,[38] the Louisiana Legislature has provided a

[37] The court of appeal also suggested the "notice and demand" statutes were implicated.

[38] *See* La. R.S. 15:499 - 501. Specifically, La. R.S. 15:499 provides in relevant part:

A. All criminalistics laboratories established by laws of this state or by laws of the United States, and all coroners, forensic pathologists, and other persons, partnerships, corporations, and other legal entities practicing in fields of knowledge and expertise in the gathering, examination, and analysis of evidence by scientific means are authorized to make proof of examination and analysis of physical evidence by the certificate of the person making the examination or analysis. Such certificate shall list:

(1) The date and time such evidence was delivered to such facility.
(2) The name of the person making such delivery, and the person receiving same.
(3) A brief description of the evidence.
(4) The type of examination or analysis requested.
(5) The name of the person making the examination or analysis.
(6) The date or dates of the examination or analysis.
(7) The results of the examination or analysis.

B. The certificate shall give the name and address of the facility in which the examination or analysis was made, and shall be signed by the person making the examination or analysis.

C. Criminalistics laboratories are authorized to utilize electronic signatures in order to comply with the provisions of Subsection B of this Section once final review of the certificate of analysis is completed. For purposes of this Section, "electronic signature" shall mean an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.

D. All organizations, entities, or persons issuing certificates as set forth in this Section shall retain and provide upon written request all of the following:
(1) A description of each analyst's educational background, training, and experience.
(2) A listing of all accreditations held by the laboratory or individual.

La. R.S. 15:500 provides: "In all criminal cases and in all cases in juvenile or family courts which are of a criminal nature, and in civil forfeiture proceedings arising from criminal activity, the courts of this state shall receive as evidence any certificate made in accordance with R.S. 15:499 subject to the conditions contained in this Section and R.S. 15:501. The certificate shall be received in evidence as prima facie proof of the facts shown thereon, and as prima facie proof of proper custody of the physical evidence listed thereon from time of delivery of said evidence to the facility until its removal therefrom."

La. R.S. 15:501 provides in relevant part:

A. The party seeking to introduce a certificate made in accordance with R. S. 15:499 shall, not less than forty-five days prior to the commencement of the trial, give written notice of intent to offer proof by certificate. Such notice shall include a copy of the certificate.

B. The attorney for the defendant, or the defendant acting in his own defense, if not represented by counsel, may demand that the person making the examination or analysis testify by filing a written demand and serving it upon the district attorney or attorney general seeking to introduce the certificate. If such a demand is made timely as set forth below, the certificate

procedure for the introduction into evidence of certain certificates prepared by criminalistics laboratories, and further provided that these certificates shall serve "as prima facie proof of the facts shown thereon, and as prima facie proof of proper custody of the physical evidence listed thereon from time of delivery of said evidence to the facility until its removal therefrom."[39] However, the law also provides a "notice and demand" procedure allowing a defendant to file a written demand "that the person making the examination or analysis testify."[40] If such a demand is filed, the certificate shall not constitute prima facie proof of the facts thereon.[41] Although Mr. Hawley's pre-trial "Notice" asserted such a demand, it does not alter our opinion. These statutes clearly refer to certificates from criminalistics laboratories conducting actual analysis of evidence, such as those considered in *Melendez-Diaz* and *Bullcoming*. The purpose of such statutes is to require the defendant to put the state on notice that he is asserting his Confrontation Clause rights. In reaching its decision in *Melendez-Diaz*, the Supreme Court recognized that many States "have already adopted the constitutional rule" announced in that case,

---

shall not constitute prima facie proof of the facts thereon as set forth in R.S. 15:500.

C. Demand for the testimony of the person making the examination or analysis shall be filed and served by counsel for the defendant, or by a defendant acting as his own counsel, within thirty days of the receipt of the notice provided for in Subsection A of this Section. The trial court may extend this thirty-day period for good cause shown if such request is made prior to the expiration of the thirty days.

D. If no request for additional time is made prior to the expiration of the thirty-day period, an extension of time in which to make such a demand may be made only upon a showing of exceptional circumstances. Any allegation that such circumstances exist shall constitute a preliminary plea on the defendant's behalf for the purposes of Louisiana Code of Criminal Procedure Article 580. The demand shall be made in writing and notice shall be served on the district attorney or the attorney general prosecuting the matter. The court shall conduct a contradictory hearing to determine if the extension is warranted.

E. The filing of a demand by the defendant does not prevent the admission of the certificate or its contents in any other manner otherwise appropriate pursuant to the Louisiana Code of Evidence or its ancillaries.

[39] La. R.S. 15:500.

[40] La. R.S. 15:501(B).

[41] *Id.*

"while many others permit the defendant to assert (or forfeit by silence) his Confrontation Clause right after receiving notice of the prosecution's intent to use a forensic analyst's report."[42] Clearly, notice and demand statutes serve a purpose only when the Confrontation Clause is invoked. Because we have already determined that S-1 and S-2 are nontestimonial and Mr. Hawley's Sixth Amendment rights were not violated, the state had no duty to produce the testimony of the person who prepared the machine recertification form. The fact that Mr. Hawley filed a written demand for the technician to testify is irrelevant.

## CONCLUSION

We find that the machine recertification form (S-1) and the technician qualification form (S-2) are not testimonial statements and therefore are not subject to Confrontation Clause requirements. Thus, the trial court did not violate Mr. Hawley's Sixth Amendment rights by ruling the certificates could be admitted into evidence without testimony. For this reason, we find the court of appeal erred in applying *Melendez-Diaz* and vacating Mr. Hawley's conviction. We hereby reverse the ruling of the court of appeal and reinstate defendant's conviction.

## DECREE

**REVERSED AND RENDERED.**

---

[42] *Melendez-Diaz*, 557 U.S. at 325-26.