

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| JIM LARA, | § | No. 08-13-00221-CR |
|  | § |  |
| Appellant, | § | Appeal from the |
|  | § |  |
| v. | § | Criminal Court No. 4 |
|  | § |  |
| THE STATE OF TEXAS, | § | of Denton County, Texas |
|  | § |  |
| Appellee. | § | (TC# CR-2011-08750-D) |
|  | § |  |

# **O P I N I O N**

Appellant Jim Lara was convicted of driving while intoxicated (DWI) after blowing into an Intoxilyzer 5000, which indicated he had at least a .145 blood-alcohol level. The legal limit in Texas is .08. At trial, the State offered the Intoxilyzer read-outs into evidence through a surrogate "technical supervisor" who was qualified to interpret the results but had no personal knowledge of the device's condition during testing, other than what the on-duty supervisor attested to in maintenance records. Lara objected, contending that under the Sixth Amendment, he had the right to confront the actual technical supervisor who oversaw the Intoxilyzer's maintenance and calibration at the time of his arrest.

However, the Second Court of Appeals' precedent dictates that Lara does not have that right. *See Settlemire v. State*, 323 S.W.3d 520 (Tex.App.--Fort Worth 2010, pet. ref'd). We hear

this case on transfer from that court and presently there is no authority from the Texas Court of Criminal Appeals or the United States Supreme Court that explicitly contravenes our sister court's conclusion. Therefore, we find Appellant's trial was otherwise free from error and we are bound to affirm Appellant's conviction.

## BACKGROUND

At trial, witness Rhonda Ofori testified that she was sitting in the parking lot of a 7-Eleven convenience store in Lewisville, Texas, at about 4:00 a.m. when she saw a man she later identified as Appellant standing outside in the cold wearing a T-shirt and jeans, attempting to use his cell phone. Ofori asked if Appellant was okay, and he responded that he needed to charge his phone so he could call either his mother or girlfriend. Ofori agreed to let him charge his phone in her car, and Appellant entered. Appellant explained that he had been in a car accident, that his head was "killing him," and that he did not know where he was, even though he had lived in Lewisville his entire life. Ofori called 911.

When Lewisville Police Office Jose Montoya arrived at the 7-Eleven, Appellant told him he had been driving his mother's black Geo Prism when the car tire blew out and he pulled over to the side of the road. He pointed in the direction of the broken-down car, and police later found it approximately a half-mile away with a damaged front left tire, a broken driver's side window, and a damaged oil pan. Appellant also admitted to drinking three beers, but he denied being intoxicated, stating that he had started drinking at 10:00 p.m., when he had a beer while eating after work, and stopped drinking at 1:00 p.m. Police arrested Appellant after he failed field sobriety tests.

At the jail, Lewisville Detention Officer Daniel Williams conducted two breath alcohol tests using an Intoxilyzer with the serial number 68-013800. Williams testified that he was a

Department of Public Safety-qualified Intoxilyzer operator, meaning he was certified to administer breath alcohol tests using the machine, but was not certified to interpret the results. Prior to testing, Williams verified that the simulator solution temperature was within the correct range and that the sample was within the instrument's prescribed tolerance. He administered the test twice, with two minutes in between tests. The Intoxilyzer then printed out a report to be interpreted by a technical supervisor.[1]

### *Procedural History*

At trial, the State called Frederick Pierce, a technical supervisor with Fondren Forensics, to interpret the Intoxilyzer test results. Fondren Forensics is a company that provides contractor forensic scientists to agencies statewide. Pierce was not a certified technical supervisor at the time the breathalyzer test was given, nor was he the technical supervisor in charge of the machine during the test. Pierce testified that he is one of Fondren Forensics' custodians of record for business records related to Intoxilyzer Serial No. 68-013800, and, over objection, the State used him to admit the Intoxilyzer's maintenance records into evidence.

Pierce explained the Intoxilyzer's technical details and specifications at trial. The Intoxilyzer uses infrared spectrometry to detect the presence of ethanol in a given breath sample placed into a foot-long, highly-polished sample chamber. Ethanol affects the transmission of infrared rays, and the receptor in the sample chamber uses the differential caused by ethanol interference to calculate the alcohol concentration level set out in its print-outs. Two people are required in order to ensure an Intoxilyzer functions properly: a technical supervisor and an operator. The technical supervisor maintains the device and interprets Intoxilyzer print-outs.

---

[1] "The primary function of the technical supervisor is to provide the technical, administrative, and supervisory expertise in safeguarding the scientific integrity of the breath alcohol testing program and to ensure the breath alcohol testing program's acceptability for evidentiary purposes." 37 TEX.ADMIN.CODE ANN. § 19.5(a)(2015)(Tex. Dep't of Pub. Safety, Breath Alcohol Testing Regulations--Technical Supervisor Certification).

The operator solely administers breath tests, and is not able to interpret the results. Pierce explained that once a month, a technical supervisor will service the Intoxilyzer. During the routine check-ins, the technical supervisor prepares a "reference sample," which is a solution containing a certain percentage of alcohol that is used to calibrate the machine. The technical supervisor will also blow acetone into the sample chamber to test the device's automatic shut-down capability, since acetone on the breath can interfere with the accuracy of result.

Pierce testified that according to business records, an unnamed technical supervisor prepared a reference sample with a 0.78 alcohol concentration, then used it to verify the device was in working order on September 21, 2011. Pierce further testified that the Intoxilyzer print-out indicated that Appellant blew a .152 during the first test and a .145 during the second test.

Following trial, Appellant was convicted of DWI. He appealed.

### DISCUSSION

Appellant raises four points on appeal. In Issue Two, Appellant contends that Pierce's testimony violated hearsay rules because the State failed to have Pierce lay sufficient foundation to admit the Intoxilyzer results as scientific evidence. In Issue One, Appellant argues that Pierce's testimony also violated his constitutional right to confront the actual technical supervisor responsible for maintaining the Intoxilyzer at the time of testing. Finally, In Issues Three and Four, Appellant urges us to overturn his conviction because the evidence at trial was uncorroborated and insufficient to convict him of DWI. He also maintains that the trial court's failure to instruct the jury on corpus delicti prejudiced him.

Because legal sufficiency is a rendition point that would entitle Appellant to a judgment of acquittal, whereas the remaining points of error would result only in reversal and remand for a new trial, we address legally sufficiency first.

4

## I. *Sufficiency and Corroboration Issues*

## A. Legal Sufficiency

On legal sufficiency review, we assess all trial evidence "in the light most favorable to the prosecution," to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Emphasis omitted]. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007), *citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). "Under this standard, evidence may be legally insufficient when the record contains either no evidence of an essential element, merely a modicum of evidence of one element, or if it conclusively establishes a reasonable doubt." *Britain v. State*, 412 S.W.3d 518, 520 (Tex.Crim.App. 2013). We review all record evidence—direct or circumstantial, properly admitted or not. *Clayton*, 235 S.W.3d at 778. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). We measure legal sufficiency based on the statutory elements of the offense as modified by the allegations set out in the indictment. *Malik v. State*, 953 S.W.2d 234, 239 (Tex.Crim.App. 1997).

Appellant argues that the corpus delicti rule bars conviction here because the State's case rests entirely on his uncorroborated extrajudicial confession. We disagree.

Under the corpus delicti doctrine, an accused's extrajudicial confession is legally insufficient to support a conviction unless the confession is corroborated by independent evidence. *Miller v. State*, 457 S.W.3d 919, 924 (Tex.Crim.App. 2015). "The corroborating evidence need not be sufficient by itself to prove the underlying offense; rather, all that is required is that there be some evidence which renders the commission of the offense more

probable than it would be without the evidence." [Internal citation and alterations omitted]. *Williams v. State*, 958 S.W.2d 186, 190 (Tex.Crim.App. 1997). "The corpus delicti of drunken driving is the (1) driving of a motor vehicle (2) on a public highway (3) while intoxicated." *Turner v. State*, 877 S.W.2d 513, 515 (Tex.App.--Fort Worth 1994, no pet.).

Here, Appellant's statements that he had driven after consuming beer are legally sufficient to support a rational finding of guilt beyond a reasonable doubt when viewed in light of the trial evidence. Appellant stated that he had been driving when a tire on his car blew out, and that after the blow-out, he walked to the 7-Eleven. Police later found Appellant's car with a damaged left front tire in the same area where he said he had left it, and at the time of his arrest, Appellant had car keys in his pocket. That evidence satisfies elements one and two. As for the intoxication element, the evidence shows that in addition to Appellant's admission to drinking three beers, Appellant also failed field sobriety tests, blew between 0.145 and 0.152 more than an hour after first interacting with police, and had glassy eyes and other physical signs of intoxication during his initial conversation with Officer Montoya.

In short, the evidence admitted at trial is sufficient to support the verdict, regardless of whether Appellant's admissions are considered or not. Issue Four is overruled.

### B. Corpus Delicti Instruction

Appellant raises another corpus delicti point in Issue Three, arguing that his conviction should be reversed because the trial court failed to instruct the jury on the corpus delicti rule. We again disagree.

We review jury charge error in a two-step process. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex.Crim.App. 2009). First, we determine if error exists. *Id*. If so, we decide whether error was preserved. If so, we will reverse a conviction upon a showing of some harm. *Id*. If not, we

6

will only reverse a conviction if a defendant suffered egregious error from the error. *Id*.

Although Appellant objected to the exclusion of this instruction, we need not reach the issue of harm, because the trial court did not err in refusing the instruction. *See Baldree v. State*, 784 S.W.2d 676, 686 (Tex.Crim.App. 1989)(holding that "a trial judge need not instruct the jury on corroboration when the corpus delicti is established by other evidence"); *Callaway v. State*, No. 13-08-259-CR, 2010 WL 467001 (Tex.App.--Corpus Christi Feb. 11, 2010, pet. ref'd)(mem. op., not designated for publication)(trial court does not err in refusing to give corpus delicti instruction where independent evidence apart from DWI confession renders corpus delicti of DWI more probable than not). Here, as we stated previously, the corpus delicti could be established by the cumulative force of the direct and circumstantial evidence when viewed separate and apart from his statements to police. As such, the trial court was not required to give the instruction.

Issue Three is overruled.

## II. *Confrontation Errors: Hearsay and the Sixth Amendment.*

The remaining two issues at the heart of this appeal concern the trial court's admission, over objection, of Intoxilyzer records and certifications through a witness who did not create those records and could not personally vouch for their accuracy. We address Appellant's hearsay point before discussing the confrontation issue.

### A. Hearsay as an Evidentiary Objection

In Issue Two, Appellant contends the trial court abused its discretion in admitting the breath test results because the State failed to lay the proper evidentiary predicate for doing so. We disagree.

We review evidentiary rulings, including rulings related to the admission of scientific

evidence, for abuse of discretion. *Bigon v. State*, 252 S.W.3d 360, 367 (Tex.Crim.App. 2008). To introduce Intoxilyzer results into evidence, "the State must establish: (1) that the machine functioned properly on the day of the test as evidenced by a reference sample having been run through it; (2) the existence of periodic supervision over the machine and operation by one who understands the scientific theory behind it; and (3) proof of the results of the test by a witness or witnesses qualified to translate and interpret such results." *Rhyne v. State*, 387 S.W.3d 896, 902 (Tex.App.--Fort Worth 2012, no pet.).

Appellant maintains that the State failed to lay the proper predicate to establish *Rhyne* prongs one and two because the actual technical supervisor in charge of the instrument did not testify. Even so, Pierce, the custodian of records for the particular Intoxilyzer at issue here, offered business records from the technical supervisor in charge of the device at the time of the test. Those records, which were admissible through the business records exception to hearsay under TEX.R.EVID. 803(6), established the Intoxilyzer was properly calibrated through the use of a reference sample (Prong One) and that the technical supervisor regularly maintained the device (Prong Two). *See Grady v. State*, 962 S.W.2d 128, 131 (Tex.App.--Houston [1st Dist.] 1997, pet. ref'd)(Intoxilyzer reports admissible into evidence as business records). Further, the fact that Pierce was not a certified technical supervisor at the time the test was given is irrelevant. At the time of trial, he was certified and thus qualified to translate and interpret such results for the trial court (Prong Three). Because the State proved up the evidentiary predicate for the Intoxilyzer records, the trial court did not violate the Rules of Evidence by admitting them.

Issue Two is overruled.

## B. Confrontation Clause

Even where hearsay is admissible under the Rules of Evidence, its use may still be

constitutionally barred on confrontation grounds. In Issue One, Appellant contends that he had the Sixth Amendment right to confront the technical supervisor who maintained and calibrated the Intoxilyzer 5000 used in his breath test, and that the trial court erred by allowing a surrogate technical supervisor to testify as to the instrument's condition using business records. Because the Second Court of Appeals has definitively held the Confrontation Clause does not allow a defendant to compel the testimony of the technical supervisor in charge of a breathalyzer at the time of a breath test, and because subsequent high court precedent never explicitly overrules this premise, we are bound to apply that precedent here. *See* TEX.R.APP.P. 41.3 (transferee court of appeals must apply transferor court's precedent "under principles of stare decisis").

*1. Standard of Review and Applicable Law*

The Confrontation Clause's dictates are clear; how those dictates apply in practice is not. *See Williams v. Illinois*, 132 S.Ct. 2221, 2245, 183 L.Ed.2d 89 (2012)(Breyer, J., concurring)(describing "the question" of confronting forensic analysts under the Sixth Amendment as "difficult, important, and not squarely addressed either today or in our earlier opinions . . . "). The most recent United States Supreme Court opinion on whether the Confrontation Clause allows an expert to draw conclusions from certifications made by non-testifying forensic analysts—*Williams v. Illinois*—resulted in a splintered 4-1-4 decision where the court of appeals judgment was affirmed but no common "narrow ground" emerged as a legal holding. *See Paredes v. State*, 462 S.W.3d 510, 516 (Tex.Crim.App. 2015)(interpreting *Williams*).[2] Given the general uncertainty and flux of Sixth Amendment jurisprudence, we

---

[2] Five justices agreed that the practice was permissible while one concurring justice and four dissenters all agreed that the expert's opinions were offered for "the truth of the matter asserted" and would thus ordinarily be prohibited by the Confrontation Clause. *See* Jeffrey Fisher, *The Holdings and Implications of* Williams v. Illinois, SCOTUSBLOG (June 20, 2012, 2:20 p.m.), http://www.scotusblog.com/2012/06/the-holdings-and-implications-of-williams-v-illinois/. However, Justice Thomas refused to hold that the hearsay statements were "testimonial" because he did not believe they were made under sufficiently solemn or formal circumstances. *Id*.

endeavor to best set out the Confrontation Clause framework below.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. CONST. AMEND. VI. "[T]o implicate the Confrontation Clause, an out-of-court statement must (1) have been made by a witness absent from trial and (2) be testimonial in nature." *Woodall v. State*, 336 S.W.3d 634, 642 (Tex.Crim.App. 2011), *citing Crawford v. Washington*, 541 U.S. 36, 50–52, 59, 124 S.Ct. 1354, 1363–65, 1368–69, 158 L.Ed.2d 177 (2004). Once both those conditions have been met and the Confrontation Clause has been implicated, testimonial hearsay is admissible only where "(1) the declarant is unavailable and (2) the defendant had a prior opportunity to cross-examine the declarant." *Woodall*, 335 S.W.3d at 642. Where the State seeks to introduce testimonial statements into evidence through a surrogate, the State must establish that the surrogate has at least some personal knowledge that the declarant's statements are true or else the statements are constitutionally inadmissible. *See Paredes*, 462 S.W.3d at 518; *Burch v. State*, 401 S.W.3d 634, 635-38 (Tex.Crim.App. 2013)(reviewer who "basically double-checked everything" the analyst did without actually conducting or observing tests could not testify as to test results).

A statement is "testimonial" when circumstances objectively indicate it was taken for the primary purpose of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *See Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 2273-74, 165 L.Ed.2d 224 (2006) (establishing primary purpose test). "A document created solely for an 'evidentiary purpose[]' . . . made in aid of a police investigation[] ranks as testimonial." *Bullcoming v. New Mexico*, 131 S.Ct. 2705, 2717, 180 L.Ed.2d 610 (2011).

*B.Confronting Technical Supervisors:* Settlemire v. State

The question at bar is whether a statement made by a technical supervisor in a business record that he correctly calibrated a breathalyzer is a "testimonial" statement subject to cross-examination under the Confrontation Clause. Appellant asserts that it is. He notes that under the Texas Administrative Code, a technical supervisor is a custodian of evidence for the State whose "primary function . . . is to provide the technical, administrative and supervisory expertise in safeguarding the scientific integrity of the breath alcohol testing program and to ensure the breath alcohol testing program's *acceptability for evidentiary purposes*." [Emphasis added]. 37 TEX.ADMIN.CODE ANN. § 19.5(a). Additionally, Appellant argues that the act of formulating a reference sample and using it to calibrate the Intoxilyzer subjects the actual on-duty technical supervisor to cross-examination, since those maintenance actions introduce the potential for human error and corruption that cast doubt on the accuracy of what would ordinarily be a simple, machine-produced result. Appellant believes the Confrontation Clause allows him to cross-examine the statements contained in those documents, because the documents implicate the actions of a state agent charged with ensuring evidentiary integrity.

Appellant's arguments are well-taken and raise serious questions about the limit of the sweeping confrontation right that has emerged post-*Crawford*. *Davis'* primary purpose test is broad, and the United States Supreme Court has repeatedly admonished lower courts not to carve out exceptions to it or other Sixth Amendment protections *Bullcoming*, 131 S.Ct. at 2716; *see also Giles v. California*, 554 U.S. 353, 375, 128 S.Ct. 2678, 2692, 171 L.Ed.2d 488 (2008)("It is not the role of courts to extrapolate from the words of the Sixth Amendment to the values behind it, and then to enforce its guarantees only to the extent they serve (in the courts' views) those underlying values."). Further, the *Bullcoming* court noted generally that "representations[] relating to past events and human actions not revealed in raw, machine-produced data[] are meet

11

for cross-examination." *Bullcoming*, 131 S.Ct. at 2714. And that same court also noted that "[a] document created solely for an 'evidentiary purpose,' *Melendez–Diaz* clarified, made in aid of a police investigation, ranks as testimonial." *Bullcoming*, 131 S.Ct. at 2717.

We acknowledge the apparent dissonance that comes with holding that statements in documents created by the State's evidentiary custodian verifying the accuracy of devices used exclusively in a prosecutorial context are not "testimonial" simply because they are not tied to a specific case—though the high courts of other states have held precisely that. *See*, *e.g.*, *State v. West*, No. CAAP-12-0000717, 135 Hawai'i 406, 2015 WL 3422156, at *4 (Haw.Ct.App. May 27, 2015)(unpublished); *State v. Hawley*, 2014-KK-0282, p. 9-10 (La. Oct. 15, 2014), 149 So.3d 1211, 1217-18; *Matthies v. State*, 2010-CT-00783-SCT (¶ 19), 85 So.3d 838, 843-44 (Miss.2012); *but see Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321, 129 S.Ct. 2527, 2538, 174 L.Ed.2d 314 (2009)("Documents kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status . . . . But that is not the case if the regularly conducted business activity is the production of evidence for use at trial."). However, we have no occasion to entertain these issues here. Precedent governs, and the Second Court of Appeals, whose law we apply in this case, squarely answered the question presented here *Settlemire*.

In *Settlemire*, 323 S.W.3d at 522, the Second Court relied on a footnote in *Melendez-Diaz* as a substantive limit on the Confrontation Clause's reach. The footnote stated that "documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records." *Id*. Without fully discussing whether the statements made were testimonial under *Davis*, the Second Court held that the language cited in *Melendez-Diaz* carved out a general exception for equipment maintenance records. *Id*. Two other courts of appeals, relying on *Settlemire* and the *Melendez-Diaz* footnote, have also held that a defendant does not have a right

to confront the specific technical supervisor responsible for the breathalyzer at the time of the breath test. *Beard v. State*, 421 S.W.3d 676, 677-78 (Tex.App.--Waco 2014, pet. ref'd); *Boutang v. State*, 402 S.W.3d 782, 789 (Tex.App.--San Antonio 2013, pet. ref'd). We note that there is ongoing controversy over whether the *Melendez-Diaz* footnote was a categorical limitation on the confrontation right or simply dicta. *See Boutang*, 402 S.W.3d at 793 (Martinez, J., dissenting from denial of reh'g en banc)(opining that footnote is dicta). Nevertheless, Fort Worth has decided this issue, and the Rules of Appellate Procedure require us to defer to Fort Worth's resolution of this issue under the principles of stare decisis.

Even so, Appellant calls *Settlemire*'s continued applicability into question following the United States Supreme Court's decision in *Bullcoming*. We note that since *Settlemire* and *Bullcoming* were decided, the Texas Court of Criminal Appeals also decided *Burch* and *Paredes*. While Tex.R.App.P. 41.3 requires us to decide the case "in accordance with the precedent of the transferor court under principles of stare decisis[,]" and while we have an on-point Fort Worth case before us, interpreting Fort Worth precedent under stare decisis principles also encompasses consideration of any intervening high court opinions--in this case, from either the Texas Court of Criminal Appeals or the United States Supreme Court. As such, we must determine whether *Bullcoming, Burch*, and *Paredes* overrule *Settlemire*. Our sister court in Eastland has concluded they do not. *See Hysenaj v State*, No. 11-13-00219-CR, 2015 WL 4733068, at *3 (Tex.App.-- Eastland Aug. 6, 2015, no pet. h.)(mem. op., not designated for publication)(discussing and applying *Settlemire* in light of *Bullcoming* as Fort Worth precedent under docket equalization order). We agree that these cases do not explicitly overrule *Settlemire*'s main premise. Thus, we will not depart from that case's holding.

*Bullcoming, Burch,* and *Paredes* contemplate the question of whether the State can use a

13

surrogate to introduce another forensic analyst's testimonial statements at trial. *See Bullcoming*, 131 S.Ct. at 2713; *Paredes*, 462 S.W.3d at 511*; Burch*, 401 S.W.3d at 637. Those cases do not deal with the threshold question of what constitutes a testimonial statement. *Settlemire* does. Further, no supervening high court case explicitly addresses the issue of which aspects of breathalyzer use and maintenance produce "testimonial" evidence. Again, *Settlemire* does. Thus, absent contradictory authority from the Second Court, *Settlemire* is the law we must apply in this unsettled arena.

In sum, the on-duty technical supervisor's statements regarding the Intoxilyzer's maintenance and condition were not "testimonial" under *Settlemire*. The trial court did not err in allowing business records containing those statements to be admitted through Pierce's testimony.

Issue One is overruled.

## CONCLUSION

The evidence underpinning Appellant's conviction was legally sufficient, and his trial was otherwise free from error under Fort Worth precedent. Issues One through Four are overruled. The judgment of the trial court is affirmed.

November 13, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Publish)