Opinion issued June 15, 2007





 














In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00286-CR

__________


JOSE RAYNUNDO ZAPATA, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from County Criminal Court at Law Number 8

Harris County, Texas

Trial Court Cause No. 1321169






O P I N I O N

 The State filed a Petition for Discretionary Review on May 31, 2007. Pursuant
to Texas Rule of Appellate Procedure 50, we withdraw our January 11, 2007 opinion,
substitute this opinion in its place, and vacate our May 17, 2007 judgment. 

 A jury found appellant, Jose Raynundo Zapata, guilty of the misdemeanor
offense of assault. (1) The trial court assessed his punishment at confinement for one
year, suspended the sentence, placed appellant on community supervision for one
year, and imposed a fine of $4,000. In his sole issue, appellant contends that the trial
court erred in admitting "testimony concerning out-of-court statements made by the
complainant, where the complainant was not shown to be unavailable for trial, had
not been subjected to cross-examination by the defense, and where such evidence was
not harmless beyond a reasonable doubt." 

 We reverse and remand.

Factual and Procedural Background

 Pasadena Police Officer Harnar, who was the only witness to testify at trial,
testified that on August 11, 2005, she was dispatched to an assault. As she pulled up
to the residence of the complainant and appellant, who were married, she saw an
officer outside the house talking to the complainant, who "was crying and shaking." 
When asked how many officers were at the scene when she arrived, Harnar stated,
"There's just one and another one back up. He got there a few seconds before I did." 
Harnar had "booked it pretty fast" to get to the residence, arrived within five to ten
minutes, and "worked the call" as the "primary unit." Harnar reiterated that the
complainant "was crying and shaking" and that "whenever she was trying to talk,"
she would "kind of talk and start crying again and talk a little bit more." Harnar then
asked the complainant "what was going on." 

 When the State asked Officer Harnar to tell the jury what the complainant said,
appellant objected on the grounds that the question called for hearsay and violated his
rights under the Sixth Amendment's Confrontation Clause. (2) The trial court overruled
appellant's objections "due to the exception," but permitted appellant to take Harnar
on voir dire. During voir dire, Harnar testified that she had never met the
complainant prior to responding to the emergency call, she spoke with the
complainant for approximately fifteen to twenty minutes at the home, she was the
second police officer to arrive at the scene, and the officer who arrived first found the
complainant outside the house waiting for assistance. Harnar did not personally
observe an assault or argument, but after speaking with the complainant outside the
home, Harnar went inside and observed damage to a wall. Harnar stated that when
she arrived, she spoke with the officer who arrived on the scene immediately before
her for approximately thirty seconds. He told Harnar that he had spoken with the
complainant for "only a few seconds" before Harnar arrived. Harnar further stated
that the complainant never recanted her assault allegations while she was at the scene. 
At the conclusion of appellant's voir dire of Harnar, the trial court again overruled's
appellant's objections and granted appellant "a running objection" to Harnar's
testimony. (3) 

 Harnar then testified that the complainant had told her, as she was crying and
shaking, that the complainant and appellant had gotten into an argument regarding
their children. When the complainant refused to obey appellant's orders to leave the
residence, appellant punched her in the head with a closed fist "quite a few times,"
she fell to the ground, and appellant kicked her in the arms and head, threw a pair of
shoes at her, grabbed her by the hair, dragged her into the hallway, picked her head
up, and slammed her face against the wall. After the appellant "finally got away"
from the complainant, she called for emergency assistance. The complainant also told
Harnar that their two children were in their bedroom in the residence with their door
closed, but the record does not reflect that she expressed any concern for their safety
to Harnar.

 Harnar observed scratches around the complainant's neck and arm and a large
red mark and bruise on the complainant's arms. The complainant told Harnar that
appellant caused her injuries. Harnar photographed the complainant's injuries, and
these photographs were introduced into evidence. Harnar also observed that the
complainant's glasses had white streaks on the lens, "consistent with the texture of
the walls which scraped the glasses" and that the glasses left a black mark on the
wall.

 Harnar then entered the residence, and she found the two children, who were
five and six years old, in the bedroom "crying and scared." After speaking with
appellant, Harnar called the district attorney, handcuffed appellant, and took him into
custody. After the State introduced into evidence the recording of the complainant's
emergency call, Harnar testified that the complainant was actually more "heavily"
shaken up when she arrived on the scene than she sounded in the recording. 

 On cross-examination, Harnar agreed that she was not familiar with the
complainant's "emotional make-up" and did not have any personal knowledge as to
whether the assault occurred. Harnar did not see or hear any fighting, and no
furniture or other household items appeared to be damaged. Harnar was outside the
residence for approximately five minutes and inside the residence for approximately
fifteen minutes. Harnar agreed that from the moment she arrived at the residence, she
was "gathering evidence for prosecution" and, when she took control of the scene,
she wanted to get the complainant "away from everyone" so that she could speak
with, understand, and "interrogate" her. Harnar further stated that the statements
made to her by the complainant were in response to her questions. 

Confrontation Clause

 In his sole issue, appellant argues that the trial court erred in admitting the
complainant's out-of-court statements because the State did not show that the
complainant was unavailable for trial, she was not subject to cross-examination by
appellant, and the erroneous admission of the statements was not harmless beyond a
reasonable doubt. Appellant asserts that "the complainant's out-of-court statements
to the officer were testimonial in nature and therefore inadmissible" and that the
admission of these statements violated the Confrontation Clause. See U.S. Const.
amend. VI; see also Davis v. Washington, -- U.S. --, 126 S. Ct. 2266 (2006);
Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004). 

 We review de novo the trial court's constitutional legal ruling that the
admission of the complainant's out-of-court statements did not violate the
Confrontation Clause on the ground that such statements were nontestimonial. Wall
v. State, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006); Vinson v. State, No.
01-05-00784-CR, 2006 WL 2291000, at *4 (Tex. App.--Houston [1st Dist.] Aug. 10,
2006, pet. granted); Cook v. State, 199 S.W.3d 495, 497 (Tex. App.--Houston [1st
Dist.] 2006, no pet.); see also Lilly v. Virginia, 527 U.S. 116, 136, 119 S. Ct. 1887,
1900 (1999).

 The Confrontation Clause of the Sixth Amendment provides: "In all criminal
prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses
against him." U.S. Const. amend. VI. Cross-examination has been described as
"beyond any doubt the greatest legal engine ever invented for the discovery of truth
. . . the great and permanent contribution of the Anglo-American system of law to
improved methods of trial procedure." John H. Wigmore, A Treatise on the
System of Evidence in Trials at Common Law 2, at 1697-98 (1904). The
Confrontation Clause bars admission of testimonial statements of a witness who does
not appear at trial unless the witness is unavailable to testify and the defendant has
had a prior opportunity for cross-examination. See Davis, 126 S. Ct. at 2273 (citing
Crawford, 541 U.S. at 53-54, 124 S. Ct. at 1354). However, only testimonial
statements cause the declarant to be a witness within the meaning of the
Confrontation Clause. Id. Therefore, nontestimonial statements, "while subject to
traditional limitations upon hearsay evidence, [are] not subject to the Confrontation
Clause." Id.

 In Crawford, the Supreme Court declined to provide "a comprehensive
definition" of the term "testimonial," but stated that it applied "at a minimum to prior
testimony at a preliminary hearing, before a grand jury, or at a former trial; and to
police interrogations." Id. at 68, 124 S. Ct. at 1374. The court further defined a core
class of testimonial statements to include: (1) ex parte in-court testimony, (2)
affidavits, (3) depositions, (4) confessions, (5) custodial examinations, and (6)
statements made under circumstances that would lead an objective witness reasonably
to believe that the statement would be available for use at a later trial. Id. at 51-52,
124 S. Ct. at 1364.

 In Davis, the Supreme Court clarified the meaning of "testimonial" as follows: 

Without attempting to produce an exhaustive classification of all
conceivable statements--or even all conceivable statements in response
to police interrogation--as either testimonial or nontestimonial, it
suffices to decide the present cases to hold as follows: Statements are
nontestimonial when made in the course of police interrogation under
circumstances objectively indicating that the primary purpose of the
interrogation is to enable police assistance to meet an ongoing
emergency. They are testimonial when the circumstances objectively
indicate that there is no such ongoing emergency, and that the primary
purpose of the interrogation is to establish or prove past events
potentially relevant to later criminal prosecution. 


126 S. Ct. at 2273-74. The court explained that "when interrogation exists, it is in
the final analysis the declarant's statements, not the interrogator's questions, that the
Confrontation Clause requires us to evaluate." Id. at 2274 n.1.

 Thus, the critical question before us in determining whether the right to
confrontation was violated is whether, objectively considered, the complainant's
statements made to Officer Harnar when she arrived at the scene are testimonial or
nontestimonial in character. 

 In Davis, the Supreme Court considered the testimonial character of statements
made during a call for emergency assistance as well as statements made to police
officers who arrived at the scene of a reported domestic dispute. See id. at 2276,
2278. The Supreme Court noted that the complainant's statements made in response
to an operator's questions during the call for emergency assistance concerned "events
as they were actually happening" rather than past events and that "any reasonable
listener would recognize" that the victim "was facing an ongoing emergency." Id.
at 2276. The Court further noted that "the nature of what was asked and answered"
was "necessary to be able to resolve the present emergency, rather than simply to
learn . . . what had happened in the past." Id. Finally, the Supreme Court noted that
the complainant's "frantic answers" were provided in an environment that was neither
safe nor tranquil. Id. at 2277. The Supreme Court held that these statements were
nontestimonial because the circumstances of the emergency operator's interrogation
"objectively indicate[d] its primary purpose was to enable police assistance to meet
an ongoing emergency." Id. 

 In contrast, the Supreme Court held that the statements made by the
complainant at the scene of an alleged domestic disturbance, which had also been
preserved in an affidavit made by the complainant at the direction of the police
officers, were testimonial. Id. at 2278-79. The Court noted that these statements
were made at a time when there appeared to be no emergency and after the assailant
and the complainant had been separated. Id. at 2278. Significantly, the court stated
that "[w]hen the officers first arrived, [the complainant] told them that things were
fine . . . , and there was no immediate threat to her person." Id. The Court concluded
that the victim's statements, made only after the officers questioned her the "second
time," "were neither a cry for help nor the provision of information enabling officers
immediately to end a threatening situation." Id. at 2278-79.

 Guided by the principles set forth in Davis and Crawford, this Court has noted
that, "in determining whether statements are testimonial, Texas courts generally have
looked to the degree of formality of a declarant's interaction with police, the purpose
and structure of police questioning, and the likelihood that the declarant expects that
the statements could be used in a criminal prosecution." Cook, 199 S.W.3d at
497-98. This Court held in Cook that statements made during a call for emergency
assistance initiated by the declarant, which was informal in nature and occurred at the
beginning of an investigation, were nontestimonial. Id. at 498. Similarly, in Spencer
v. State, our sister court held that statements made to police officers responding to a
call for emergency assistance during the initial assessment and securing of a crime
scene were nontestimonial. 162 S.W.3d 877, 882 (Tex. App.--Houston [14th Dist.]
2005, pet. ref'd).

 This Court recently held that a complainant's statement that her boyfriend
assaulted her, which was made to a deputy who arrived at the complainant's
apartment in response to a call for emergency assistance, was nontestimonial. Vinson,
2006 WL 2291000, at *7. In Vinson, a Sheriff's deputy had arrived within ten to
fifteen minutes of the emergency call. Id. The call had originally been disconnected,
and when the dispatcher had called the number back, the male who answered denied
that there was an emergency, while someone in the background yelled for police
assistance. Id. We concluded that when the deputy asked the complainant inside her
apartment, "What happened," he was simply determining whether there was an
ongoing emergency, and so the victim's statement identifying her assaulter was
nontestimonial. Id. In fact, the defendant "who was sweating profusely, shirtless,
and 'very excited'--entered the room and implicitly ordered [the complainant] to
answer in a certain way so that he would not be taken to jail." Id. at *8. We also
concluded that the victim's other statements, including her description of the assault,
were nontestimonial, because when the victim made these statements, the deputy
"was continuing to assess" an "ongoing and dangerous situation." Id. at *8-9. 
Significantly, the deputy testified that only after his partner arrived at the scene and
it had been secured did he feel "safe that nothing else was going to occur." Id. at *9.

 Here, although Officer Harnar testified that she had "booked it pretty fast" to
the residence and that she arrived within five to ten minutes from the emergency call,
she agreed that she met with the complainant only after speaking with another officer
who had arrived on the scene before her. Harnar spoke with the first-responding
officer for approximately thirty seconds, and she learned that the first-responding
officer found the complainant outside the residence waiting for assistance. Harnar,
who "worked the call" as the "primary unit," asked the complainant "what was going
on," and the complainant explained how she had been physically assaulted by
appellant inside the residence. The complainant also told Harnar that she had called
for emergency assistance once appellant "finally got away" from her. 

 Officer Harnar agreed that she did not observe any assault and that by the time
both she and the first-responding officer had arrived at the scene, there was no
argument or physical confrontation taking place between the complainant and
appellant. Harnar further agreed that from the time that she had arrived at the
residence, including the time she spoke with the complainant, she was "gathering
evidence for prosecution" and that she "interrogated" the complainant, who
responded to the questioning rather than volunteering information. (4) After speaking
with the complainant, Harnar entered the home and obtained statements from both
appellant and the children, who remained in the bedroom, and also took photographs
to document the complainant's injuries.

 The complainant's statements indicate that although she had been recently
assaulted, she was able to make an emergency call, leave the residence, and wait for
emergency assistance outside the residence and away from appellant. Appellant and
the complainant were separated when Officer Harnar arrived, and there is no evidence
that there was an ongoing conflict between the two. Additionally, the complainant's
statements describe past events rather than events as they were actually happening. 
There is evidence that the complainant answered Harnar's questions in an emotional
state, but there is nothing in the record to indicate that Harnar was facing an ongoing
emergency during the complainant's explanation of how she had been assaulted. 

 We conclude that the complainant's statements, made in the course of Harnar's
questioning, were made under circumstances objectively indicating that there was no
ongoing emergency. Because the complainant's statements served to establish or
prove past events potentially relevant to later criminal prosecution, her statements
were testimonial. Accordingly, we hold that Officer Harnar's testimony about the
complainant's out-of-court statements violated the Confrontation Clause of the Sixth
Amendment and that the trial court erred in admitting the complainant's out-of-court
statements into evidence.

 Furthermore, in light of the facts that Officer Harnar was the only witness to
testify at trial and that her testimony regarding the complainant's out-of-court
statements provided evidence critical to establishing the elements of the offense, we
cannot conclude beyond a reasonable doubt that the trial court's error, in admitting
the complainant's out-of-court statements in violation of the Confrontation Clause of
the Sixth Amendment, did not contribute to appellant's conviction. See Tex. R. App.
P. 44.2(a).

 We sustain appellant's sole issue. 

Conclusion


 We reverse the judgment of the trial court and remand the cause for
proceedings consistent with this opinion.


 Terry Jennings

 Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.


Publish. Tex. R. App. P. 47.2(b).
1. See Tex. Pen. Code Ann. § 22.01 (Vernon Supp. 2006). 
2. U.S. Const. amend. VI.
3. Appellant does not appeal the trial court's ruling on his general hearsay objection. 
See Wall v. State, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006) (recognizing that
"excited utterance and testimonial hearsay inquiries are separate, but related").
4. As conceded by the State at oral argument, although the complainant told Officer
Harnar that her children were in the residence in a bedroom behind a closed door
during the argument, there is no evidence in the record that either Harnar or the
complainant were, at any time, concerned with the children's safety. Moreover, the
State, in its briefing to this Court, does not argue that Officer Harnar or the
complainant were in any way concerned about the safety of the children.