**Opinion issued December 8, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00118-CR

————————————

**JOSE MANUEL NUNCIO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 1**
**Harris County, Texas**
**Trial Court Case No. 2025967**

---

## MEMORANDUM OPINION

A jury convicted appellant, Jose Manuel Nuncio, of assaulting his common

law wife, Damaris Lugo. In three issues, appellant argues that the trial court erred

in admitting into evidence Lugo's out-of-court statements to the 911 operator and

to the responding officer because the statements were inadmissible, testimonial hearsay.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Lugo calls 911 to report assault by appellant*

In May 2015, Damaris Lugo placed a call to 911.  Lugo told the operator that she had been hit by her husband, appellant, and that she had fled their house with their two children.  Lugo said that she needed the police and gave the operator her current location, which was a few blocks away from her and appellant's house.

The operator then asked about appellant's location and whether he was intoxicated, whether he had a history of mental illness, and whether he was armed.  Lugo said that appellant was still at their house and gave the operator the address.  Lugo told the operator that appellant was not armed and did not have a history of mental illness, but that he had been drinking.

Deputy Alejandro Nieto was dispatched to the scene.

### *Nieto arrives and questions Lugo*

Deputy Nieto responded to the dispatch around midnight.  He met Lugo several blocks away from her house, where she sat in a parked car on the side of the road with her two children asleep in the backseat.  Nieto thought that Lugo "looked pretty bad"—he noticed that she had fresh injuries to her face, including bruising under her left eye and a cut lip.  He described her as scared and distraught.

2

Deputy Nieto asked Lugo whether she needed medical help and called EMS. Nieto then asked Lugo to tell him exactly what happened that evening. Lugo gave Nieto the following explanation:

- Around 7:40 that evening, appellant left his and Lugo's home to go drink with friends at another house nearby.

- About an hour later, after several unsuccessful attempts to contact appellant, Lugo drove to the house. She asked him to pick up some water for their children and to return home. Appellant said he would be on his way.

- Around 10:45, appellant returned home without any water, and Lugo and appellant began to argue. As they argued, appellant became angry and began to assault Lugo, and Lugo tried to defend herself. Appellant slapped her, pushed her, grabbed her by the neck, pulled her by the hair, and punched her in the face. Lugo then packed some clothes and left the house with the children.

After she finished explaining what had happened, Lugo told Nieto that she did not want to stay on the side of road in her hot car with her two children, but that she was afraid to return home to appellant.

***Tran arrives and photographs Lugo***

While Nieto was questioning Lugo, Deputy Mike Tran arrived at the scene to assist Nieto and photograph Lugo's injuries. He observed that Lugo's injuries appeared fresh, and that they were consistent with having been assaulted.

***Nieto and Tran question and arrest appellant***

After questioning and photographing Lugo, Nieto and Tran went to appellant and Lugo's home, where they found appellant asleep. Nieto and Tran woke

3

appellant and began to question him. As Nieto and Tran questioned appellant, they noticed that he appeared intoxicated, and that he had defensive wounds on his forearms and wrists.

Appellant told Nieto and Tran that he and Lugo had gotten into an argument and that they had pushed each other. When asked about the injuries to Lugo's face, appellant responded that Lugo "must have hit the door or something." Appellant did not give any other explanation of what happened to Lugo's face. Finding appellant's statement inconsistent with Lugo's injuries, Nieto arrested appellant and called the District Attorney's office for charges of domestic violence. The State charged appellant with assault of a family member.

### Appellant is tried and convicted

At trial, the State's evidence included a taped recording of Lugo's call to 911, the testimony of Deputy Nieto, the testimony of Deputy Tran, the photographs of Lugo's injuries taken by Tran, and a patient care report prepared by EMS personnel. The State was unable to secure the testimony of Lugo, and, therefore, did not offer her testimony.

During the State's case-in-chief, appellant objected to the admission of the 911 tape on Confrontation Clause and hearsay grounds.[1] The trial court overruled

---

[1] Appellant also objected to the admission of the 911 tape in a pre-trial motion to suppress.

appellant's objections and admitted the recording into evidence. Appellant also objected to Nieto testifying about the statements Lugo made to him on the evening of the assault, again on Confrontation Clause and hearsay grounds. The trial court again overruled appellant's objections and permitted the State to question Nieto about what Lugo told him the night of the assault.

During his case-in-chief, appellant testified on his own behalf. Appellant denied that he had assaulted Lugo. He claimed that she received her injuries in a four-wheeling accident the day before the incident. He admitted, however, that he did not tell Deputies Nieto and Tran that Lugo had been in a four-wheeling accident when they questioned him about her injuries.

Lugo testified on appellant's behalf. Appellant's counsel questioned Lugo about both her statements to the 911 operator and her statements to Deputy Nieto. Lugo testified that she had lied to the 911 operator and to Deputy Nieto. She said that appellant did not actually hit her, and that she received her injuries in a four-wheeling accident.

Lugo further testified that, on the night of the assault, she and appellant had been arguing because appellant had arrived home late from his friend's house without any water for their children, and because she had discovered that appellant had had an affair.[2] She said that she asked appellant to leave their house, but that

---

[2] Appellant never mentioned that Lugo had been mad at him for having an affair.

5

he refused, so she decided to leave instead. Lugo testified that she told the 911 operator and Deputy Nieto that appellant had hit her because she wanted appellant out of the house, and because she was angry with appellant about the affair and wanted to get back at him.

The jury returned a guilty verdict, and the trial court sentenced appellant to one year in jail probated for one year and a fine of $500. Appellant timely appealed.

## ISSUES

In three issues, Appellant argues that the trial court erred in admitting into evidence Lugo's out-of-court statements to the 911 operator and to Deputy Nieto because the statements were inadmissible under the Confrontation Clause and under the rule against hearsay.

## ANALYSIS

### *Confrontation Clause*

Appellant contends that Lugo's out-of-court statements to the 911 operator and to Deputy Nieto were inadmissible under the Confrontation Clause of the Sixth Amendment to the United States Constitution. The State, in response, contends that the admission of Lugo's out-of-court statements did not violate the Confrontation Clause because Lugo testified at trial.

## 1. Standard of Review and Applicable Law

We review de novo the trial court's constitutional legal ruling that the admission of the complainant's out-of-court statements did not violate the Confrontation Clause. *Zapata v. State*, 232 S.W.3d 254, 257 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Cook v. State*, 199 S.W.3d 495, 497 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

The Sixth Amendment's Confrontation Clause guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI. Its main purpose is to afford the defendant "the opportunity of cross-examination because that is 'the principal means by which the believability of a witness and the truth of his testimony are tested.'" *Johnson v. State*, 490 S.W.3d 895, 909 (Tex. Crim. App. 2016) (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)).[3]

Under the Confrontation Clause, "'the State may not introduce a testimonial hearsay statement unless (1) the declarant is unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the declarant.'" *Trigo v. State*, 485 S.W.3d 603, 609 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (quoting

---

[3] *See also Davis v. State*, 169 S.W.3d 660, 673 n.2 (Tex. App.—Austin 2005), *aff'd*, 203 S.W.3d 845 (Tex. Crim. App. 2006) ("The purpose of confrontation is to ensure reliability by means of the oath, to expose the witness to cross-examination, and to permit the trier of fact to assess credibility.").

*Lee v. State*, 418 S.W.3d 892, 895 (Tex. App.–Houston [14th Dist.] 2013, pet. ref'd)). The Confrontation Clause has been held to apply only to the testimonial hearsay of witnesses *who do not appear at trial*. *Davis v. Washington*, 547 U.S. 813, 821 (2006); *Wall v. State*, 184 S.W.3d 730, 734 (Tex. Crim. App. 2006); *Zapata*, 232 S.W.3d at 258. Thus, if the witness "appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of her prior testimonial statements." *Eustis v. State*, 191 S.W.3d 879, 886 (Tex. App.— Houston [14th Dist.] 2006, pet. ref'd) (citing *California v. Green*, 399 U.S. 149, 162 (1970)).[4] "The Confrontational Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id.* (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)).

## 2. Analysis

Lugo appeared and testified at trial. In fact, she was called as a witness *by appellant* and testified that she lied to the 911 operator and to Deputy Nieto. Thus,

---

[4] *See, e.g., Rice v. State*, No. 09–14–00174–CR, 2016 WL 4040117, at *6 (Tex. App.—Beaumont July 27, 2016, no. pet.) (mem. op.) (holding no violation of Confrontation Clause occurred when defendant "had a full opportunity to question the informant regarding her telephone call with [the defendant] and any statements she made to the detective"); *Herrera v. State*, No. 05–11–00977–CR, 2012 WL 4748203, at *2 (Tex. App.—Dallas Oct. 5, 2012, no pet.) (mem. op.) (holding *Crawford* did not apply when the declarant "appeared, testified, and was subject to cross-examination by defense counsel"); *Gomez v. State*, 183 S.W.3d 86, 90–91 (Tex. App.—Tyler 2005, no pet.) (holding *Crawford* did not bar officers from testifying about statements made to them by complainant when complainant "also testified, and Appellant had the opportunity to cross examine her").

appellant was afforded the opportunity to examine Lugo about her out-of-court statements. *See Johnson*, 490 S.W.3d at 909. Therefore, we hold that the admission of Lugo's out-of-court statements did not violate the Confrontation Clause. *See Eustis*, 191 S.W.3d at 886.

### *Hearsay*

Appellant contends that Lugo's out-of-court statements to the 911 operator and to Deputy Nieto were inadmissible hearsay. The State, in response, contends that the statements fell within the excited utterance exception to the hearsay rule.

### 3. Standard of Review and Applicable Law

We review the trial court's ruling on the admissibility of evidence for an abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). We must review the trial court's ruling in light of the evidence before the trial court at the time the ruling was made. *Id.* We will uphold the trial court's ruling unless it falls outside the zone of reasonable disagreement. *Id.*; *Cook v. State*, 199 S.W.3d 495, 498 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d); *Baldree v. State*, 248 S.W.3d 224, 230–31 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Hearsay statements are inadmissible, except as provided by statute or other rule. TEX. R. EVID. 802; *Baldree*, 248 S.W.3d at 231.

9

Rule 803(2) of the Texas Rules of Evidence is such an exception. Under Rule 803(2), a hearsay statement is admissible if it qualifies as an "excited utterance." TEX. R. EVID. 803(2). An "excited utterance" is a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." *Id.* "While time can certainly be a factor in determining an excited utterance, it is not dispositive." *Cook*, 199 S.W.3d at 498. "Rather, the critical consideration is 'whether the declarant [is] still dominated by the emotions, excitement, fear or pain of the event.'" *Id.* (quoting *Zuliani v. State*, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003)).

### 4. Analysis

Lugo's out-of-court statements to the 911 operator and to Deputy Nieto were offered to prove the truth of the matter asserted. Therefore, the statements were hearsay. TEX. R. EVID. 801(d). Thus, we must determine whether the statements fell within the excited utterance exception to the rule against hearsay.

During her call to 911, Lugo told the operator that appellant had been "out of control" and had hit her and that she needed the police. And when Deputy Nieto arrived at the scene, he observed that Lugo was "very scared and distraught . . . ." From this the trial court could have reasonably concluded that Lugo's statements to the 911 operator and to Deputy Nieto were made while she was "still dominated by the motions, excitement, fear or pain of the [assault]." *Cook*, 199 S.W.3d at 498.

10

We hold that the trial court did not abuse its discretion by admitting the statements under the excited utterance exception to the rule against hearsay.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Bland.

Do not publish.  TEX. R. APP. P. 47.2(b).