

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00410-CR

_____

NORRIS DEWAYNE MCDOWELL, Appellant

v.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1510985R

---

Before Sudderth, C.J.; Gabriel and Pittman, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

## I. Introduction

Appellant Norris Dewayne McDowell appeals his conviction for assault family violence with a prior conviction. *See* Tex. Penal Code Ann. § 22.01(b)(2)(A) (West Supp. 2018). In three issues, McDowell argues that the trial court erred by allowing the police officer to testify about comments the victim and her friend had made to him and by admitting the video made by the police officer's in-car dash camera, which recorded the officer's initial conversation with the victim and the witness near the scene. Because we hold that the police officer's testimony relaying the victim's statements was admitted in violation of the Confrontation Clause and because we cannot conclude beyond a reasonable doubt that admission of the victim's statements through the officer's testimony did not contribute to McDowell's conviction, we reverse and remand.

## II. Background

A 9-1-1 call regarding a domestic disturbance was received at 7:55 a.m. on August 21, 2016. The 9-1-1 caller said that his girlfriend, Curtisha Guy, had called him whispering and had told him that domestic violence was occurring at 6509 Plainview Court in Arlington but that she was not the one being assaulted. The 9-1-1 caller said that Curtisha's uncle was the offender. He said that Curtisha was scared and that she and his daughter were hiding in a closet. When asked if an ambulance

was needed, he said that Curtisha had told him that the victim had bruises, that the man was continuing to hit her, and that she was screaming at the top of her lungs.

The 9-1-1 operator then called Curtisha. Curtisha stated that she was talking to the victim and gave brief answers to the operator's questions, including answering affirmatively when asked if "he" was still there. Crying can be heard in the background as Curtisha answered the operator's questions. A recording of the call was played for the jury.

Officer Eric Bray testified at trial that he and his back-up officer arrived on the scene shortly after 8:00 a.m. and noticed a white female (Darcie Pepin)[1] and a black female (Curtisha)[2] walking on the sidewalk toward them. Officer Bray noticed that Darcie had multiple injuries on her face and arm. Two of the injuries stood out to Officer Bray: a huge bruise that did not appear to be fresh but covered much of her upper left arm and a fresh injury near her mouth that "kind of stretch[ed] between her lips as she talked." After talking with Darcie and Curtisha,[3] Officer Bray learned that

---

[1]Officer Bray's report listed the victim's name as Darcie Detin or Darcie Depin, but he testified that these were typographical errors made by the data entry clerk.

[2]In addition to the two females, there was a baby, but Officer Bray could not recall which female was holding the baby.

[3]Officer Bray's conversation with Darcie and Curtisha was recorded on his in-car dash camera. The conversation is not always audible because there are loud announcements from dispatch that cover up the conversation and because neither Darcie nor Curtisha had a microphone. The video does not show facial expressions or Darcie's injuries because the conversation took place on the sidewalk across the street from where Officer Bray had parked his patrol car.

McDowell—Darcie's boyfriend and Curtisha's uncle—had assaulted Darcie and that he was asleep in the house, along with Curtisha's two children who were three and six years old. Darcie gave Officer Bray and his back-up officer permission to enter the house and directions to the master bedroom where she presumed McDowell was still sleeping. Officer Bray found McDowell asleep on the floor in the master bedroom and ultimately arrested him.

After McDowell was arrested and the scene was secure, an ambulance arrived. Officer Bray then photographed Darcie's injuries before the ambulance took her to the hospital.[4]

Officer Bray testified that he followed the ambulance to the hospital and "stood by" with Darcie until Curtisha arrived with the children and Darcie met with the victims assistance unit. After Darcie met with the victims assistance unit, Officer Bray learned that Darcie did not want to prosecute the case.

Curtisha testified at trial that she recognized her voice on the recording of the call from the 9-1-1 operator and that she recognized herself in the video that was taken from Officer Bray's patrol car. But she claimed not to remember talking to the police or anything about the August 21 incident.

Darcie did not appear for trial.

Claudia Rodriguez, a counselor with the Arlington Police Department, testified that she met with Darcie at the hospital on August 21. Rodriguez helped Darcie

---

[4]The photographs of Darcie's injuries were admitted into evidence.

complete the family violence packet and told her about services that would be available to her after she left the hospital. Rodriguez talked to Darcie about "red flags" and the cycle of abuse.

Zach Morgan, an EMT who responded to the scene on August 21, testified that Darcie had both fresh injuries and older injuries. Morgan noted that Darcie had "bruises that were in different stages of healing."

Darren Gabbert, an investigator with the Tarrant County District Attorney's Office, testified regarding his attempts to serve Darcie with a subpoena to appear at trial. Gabbert went to the house where the August 21 incident had occurred and noticed that there were surveillance cameras on the exterior of the house. He saw a woman who appeared to be Darcie walking down the hallway inside the home, but a male voice answered through the security camera's speaker and said that no one was home. Gabbert attempted to serve the subpoena on Darcie three other times but was unsuccessful.

Kathryn Jacob, the president and CEO of SafeHaven—a domestic violence service provider, testified to educate the jury about the dynamics of family violence. Jacob testified that it generally takes a victim "between six and nine attempts" to leave her abuser permanently and that depending on where the victim is on that continuum, she may or may not cooperate with the court system or law enforcement. Jacob said that it is quite common for a domestic violence victim to avoid being served with a subpoena. Jacob explained that a victim's level of cooperation can be affected if she

remains in the home with her attacker after the assault because of threats of retaliation made by the attacker. If the victim has children with her abuser, she may want to remain in a relationship with him because she does not want to limit the child's ability to interact with his or her father. Jacob testified that victims often change their stories.

During closing, the State asked whether McDowell should "be permitted to get away with an act of extreme violence solely because [of] bullying or whatever reason, fear of retaliation, you name it, you deduce from the evidence what that might be, why this victim wasn't here . . . ." The State then told the jury that they could not rid the world of the plague of domestic violence with this one case but that they could stop Darcie from being assaulted by McDowell. The State told the jury that Darcie clearly did not inflict the injuries on herself and that Curtisha's statements, the 9-1-1 calls, the video from Officer Bray's dash camera, the photos of Darcie's injuries, and Darcie's statements "when she was upset" all demonstrate that one person—McDowell—was responsible for Darcie's injuries.

During rebuttal, after addressing defense counsel's arguments about Darcie's absence from the trial, the State reminded the jurors of the sequence of events, beginning with the 9-1-1 call from Curtisha's boyfriend and the 9-1-1 operator's call to Curtisha and proceeding through Darcie's statements and Curtisha's statements during their initial conversation with Officer Bray. The State said, "[T]he only evidence we have is that he is guilty of assaulting her."

6

After hearing the evidence, the jury found McDowell guilty of assault causing bodily injury to a family or household member with a previous conviction as charged in the indictment.

### III. Admission of Officer Bray's Testimony

In his first issue, McDowell argues that the trial court erred when it allowed Officer Bray to testify about statements that Darcie had made, which were allegedly not included in the video, regarding a prior assault by McDowell and her fear of McDowell.

### A. Standard of Review

We review de novo the trial court's decision to admit the complained-of statements over McDowell's objection based on the Confrontation Clause. *See Lilly v. Virginia*, 527 U.S. 116, 136–37, 119 S. Ct. 1887, 1900 (1999) (plurality op.); *Wall v. State*, 184 S.W.3d 730, 742–43 (Tex. Crim. App. 2006).

### B. Applicable Law

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54, 124 S. Ct. 1354, 1365 (2004). In *Davis v. Washington*, the Supreme Court established the following:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. 813, 822, 126 S. Ct. 2266, 2273–74 (2006).

In determining whether statements were testimonial, the issue is whether circumstances were present that would indicate the existence of an ongoing emergency at the time the statements were made. *See Vinson v. State*, 252 S.W.3d 336, 339 (Tex. Crim. App. 2008). In deciding this issue, we review the totality of the circumstances and may consider the following nonexclusive factors: (1) whether the situation was still in progress; (2) whether the questions sought to determine what is presently happening as opposed to what has happened in the past; (3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime; (4) whether the questioning was conducted in a separate room, away from the alleged attacker; and (5) whether the events were deliberately recounted in a step-by-step fashion. *See id.* (citing *Davis*, 547 U.S. at 822, 126 S. Ct. at 2274–75); *Wilson v. State*, 296 S.W.3d 140, 146 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). Whether an ongoing emergency exists "is a highly context-dependent inquiry." *Michigan v. Bryant*, 562 U.S. 344, 363, 131 S. Ct. 1143, 1158 (2011). Moreover, "the

8

duration and scope of an emergency may depend in part on the type of weapon employed."[5]  *Id.* at 364, 131 S. Ct. at 1158.

## C.  Relevant Portions of Record

When the State asked Officer Bray about the photographs of Darcie's injuries, he testified that some of Darcie's bruises were older.  Officer Bray explained that Darcie had told him that the older bruises were from when McDowell had assaulted her the week prior to August 21, 2016.  Officer Bray also testified "that [Darcie] was worried that if the police were involved that Mr. McDowell would retaliate against her."[6]  Neither of these complained-of statements are audible on the video from Officer Bray's in-car dash camera.

## D.  Analysis

### 1.  Testimonial Hearsay

At trial, neither the State nor McDowell asked Officer Bray when the complained-of statements were made to him.  Once McDowell lodged his objection

---

[5]For example, when an offender was armed only with his fists as he attacked his wife, removing his wife to a separate room was sufficient to end the emergency, but if he had been armed with a gun, separation by a single household wall might not have been sufficient to end the emergency.  *See Bryant*, 562 U.S. at 364, 131 S. Ct. at 1159 (citing *Davis*, 547 U.S. at 819, 830–32, 126 S. Ct. at 2272, 2278–79).

[6]Early on during the State's questioning of Officer Bray, McDowell requested and was granted a running objection to Darcie's testimony on hearsay and also on *Crawford* grounds.  Because Officer Bray testified that Curtisha had told him that Darcie said she was afraid that McDowell would retaliate, Bray's testimony related hearsay within hearsay.  Any error as to the admission of statements attributed to Darcie was thus preserved by McDowell's running objection as to Darcie's statements.

to the statements, it was incumbent on the State, as the proponent of the evidence, to bring forth evidence of those facts sufficient to demonstrate th

at Officer Bray's testimony regarding Darcie's statements did not run afoul of the Confrontation Clause. *See De La Paz v. State*, 273 S.W.3d 671, 680–81 (Tex. Crim. App. 2008) (stating that once an appellant objects to the admission of evidence on Confrontation Clause grounds, the burden shifts to the State, as the proponent of the objected-to evidence, to establish its admission). Without evidence of the timing of the complained-of statements, we cannot perform the fact-intensive analysis of whether circumstances were present that would indicate the existence of an ongoing emergency at the time the statements were made. *See Vinson*, 252 S.W.3d at 339. Because the State did not carry its burden, we conclude that the trial court erred by admitting Officer Bray's testimony relaying Darcie's statements. *See id.* at 681 (holding that because the State failed to carry its burden of establishing the admissibility of the notes under *Crawford*, the trial court erred by admitting notes that were not obviously nontestimonial). We now determine whether this error was harmful.

### 2. Harm Analysis

Because error in the admission of testimonial hearsay is error of constitutional dimension, we apply rule 44.2(a). Tex. R. App. P. 44.2(a); *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010). The question is whether the trial court's error in allowing the complained-of testimony was harmless beyond a reasonable doubt. *See Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997). In applying

the "harmless error" test, our primary question is whether there is a "reasonable possibility" that the error might have contributed to the conviction or punishment. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

Our harmless error analysis should not focus on the propriety of the outcome of the trial; instead, we should calculate as much as possible the probable impact on the jury in light of the existence of other evidence. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001). We "should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment,'" and if applicable, we may consider the nature of the error, the extent that it was emphasized by the State, its probable collateral implications, and the weight a juror would probably place on the error. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011) (quoting Tex. R. App. P. 44.2(a)). This requires us to evaluate the entire record in a neutral, impartial, and even-handed manner, not "in the light most favorable to the prosecution." *Harris v. State*, 790 S.W.2d 568, 586 (Tex. Crim. App. 1989), *disagreed with in part on other grounds by Snowden*, 353 S.W.3d at 821–22.

In this case, Officer Bray was the sole witness who testified about the details of the offense, and the bulk of his testimony was based on Darcie's out-of-court statements. The complained-of statements tended to show a history of domestic

violence, rather than a single incident. Moreover, the jury had before it testimony from a counselor with the Arlington Police Department and from the president and CEO of SafeHaven about the cycle of domestic violence, about the number of times a domestic violence victim might attempt to leave before permanently leaving her abuser, and about why a victim might resist testifying against her abuser. Considering the domestic violence testimony at trial and the State's closing and rebuttal arguments that emphasized how Darcie's fear of retaliation played a role in her absence from the trial, the complained-of statements regarding the prior assault and Darcie's fear of retaliation could have materially affected the jury's deliberations. *See Satterwhite v. Texas*, 486 U.S. 249, 256, 108 S. Ct. 1792, 1797 (1988); *McCarthy v. State*, 65 S.W.3d 47, 55 (Tex. Crim. App. 2001), *cert. denied*, 536 U.S. 972 (2002).

After carefully reviewing the record and performing the required harm analysis under rule 44.2(a), we are unable to determine beyond a reasonable doubt that the error in admitting the complained-of testimony did not contribute to the jury's guilty verdict. *See* Tex. R. App. P. 44.2(a); *Zapata v. State*, 232 S.W.3d 254, 260–61 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (holding that because officer's testimony regarding the complainant's out-of-court statements provided evidence critical to establishing the elements of the offense, the appellate court could not conclude beyond a reasonable doubt that the trial court's error—admitting the complainant's

12

out-of-court statements in violation of the Confrontation Clause—did not contribute to appellant's conviction).  We sustain McDowell's first issue.[7]

## IV.  Conclusion

Having sustained McDowell's first issue, which is dispositive of this appeal, we reverse the trial court's judgment and remand the case for a new trial.  *See* Tex. R. App. P. 43.2(d).

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  November 29, 2018

---

[7]Based on the harmful constitutional error we have found in the admission of Officer Bray's testimony relaying what Darcie had told him, we need not address McDowell's second and third issues, arguing that the trial court erred by admitting the video that captured the conversation Officer Bray had with Darcie and Curtisha when he initially encountered them.  *See* Tex. R. App. P. 47.1 (requiring appellate court to address only issues necessary to disposition of appeal).