**Opinion issued February 4, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00382-CR

———————————

### ELIO RAUL TRIGO, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Criminal Court at Law No. 4**
**Harris County, Texas**
**Trial Court Case No. 1931972**

---

## O P I N I O N

This is an appeal from a judgment entered on a jury verdict finding appellant, Elio Trigo, guilty of driving while intoxicated. Appellant was sentenced by the trial court to four days' confinement in the Harris County Jail and a $1,500.00 fine. We affirm.

# BACKGROUND

## A.    Trial Evidence

Officer T. Tomeo, a patrol officer with the Houston Police Department (HPD), testified that he has worked the 11:00 p.m. to 7:00 a.m. patrol shift for sixteen years.  He has approximately 2200 hours of police training, which include training in enforcing traffic laws, as well as "training in the identification of intoxicated drivers and the administration of standardized field sobriety tests." Given the location he patrols and its proximity to bars and restaurants, he has conducted hundreds of evaluations on drivers he suspected were intoxicated.  He also has encountered many people who have been drinking, but "haven't exhibited enough clues to suggest a DWI investigation."

Tomeo identified common observations of an intoxicated person that include "slurred speech; a strong odor of alcoholic beverage coming from the person's mouth; red, glassy, or bloodshot eyes, [and] poor balance."   When he sees these signs exhibited, it is protocol to administer standardized field sobriety tests.

The night of November 27, 2013, Tomeo testified he came into contact with appellant while patrolling Westheimer Street.  About 1:30 a.m., Tomeo saw appellant pulling out of a strip center parking lot—where a bar is located— driving a black Ford Focus.  Tomeo immediately noticed that it was difficult to see the car because there were no taillights turned on.  He began to follow appellant's car

while he called in the license plate number to be sure it was not stolen or subject to any investigation. While he was following appellant, he "saw that he had difficulty keeping the vehicle within a single lane of traffic." Also, although the speed limit was 35 mph, appellant was driving at least 60 miles per hour.

Tomeo pulled appellant over. Tomeo testified that appellant's speech was slurred and he smelled of alcohol. He asked appellant if he had been drinking, and appellant admitted he had two beers. Specifically, appellant claimed to have had one beer at 8:00 p.m. and then a second beer at 10:30 p.m. Finally, appellant reported that he had last eaten at about 6:00 p.m.

Tomeo called for a DWI unit to take over, as it is preferable to turn over cases and get back to patrol and answering calls. Because none were available, however, Tomeo himself administered the field sobriety tests on appellant.

He first administered a horizontal gaze nystagmus (HGN) test, which involves observing how the eyes react when presented with stimulus that has movement. He also administered the "one-leg stand" and "walk-and-turn" tests. Based on his observations of appellant's performance in these tests, he formed the opinion that appellant had lost the normal use of his physical faculties. He then asked appellant to give a breath sample, which appellant agreed to do after Tomeo gave him the statutory warnings about the consequences of agreeing to or declining a breathalyzer test.

3

While still at the scene of the stop, Tomeo asked appellant if he had more than $500.00 in cash, which appellant did. Pursuant to policy, Tomeo called for a nearby sergeant to verify the amount of appellant's money. Tomeo then transported appellant to the police station, and had Mary Skelton—the city technician—assist him with the collection of a breath sample.

Mary Skelton testified at trial that she works for HPD as an Evidence Technician, i.e., "a breath test operator," that she is a trained phlebotomist, and that she administers standard field sobriety tests. Following 40 hours of training, she was certified as a Intoxilyzer Operator, and she is also certified by the Texas Department of Public Safety as an Intoxilyzer Operator. On November 27, 2013, she was asked my Tomeo to perform a breathalyzer test on appellant. She conducted the test with an Intoxilyzer 5000 machine. When the test starts, the machine goes through a series of diagnostic checks of the internal memory, the microprocessor, the clock, and the printer. If the diagnostic tests indicate that everything is functioning properly, it gives a "circuitry okay" message, and the operator can proceed with the test. The machine next goes through an "air blank," meaning it fills the sample chamber with room air. If the machine detects a contaminant in the room, such as the suspect wearing strong perfume, then the machine signals that the operator cannot proceed. If the air blank process is successfully done, the machine prompts the subject to blow into the instrument.

4

After the sample is accepted, the machine goes through another air blank, then a reference, another air blank, then another subject test, and an air blank. The temperature must be between 33.8 and 44.2 degrees Celsius. She recorded that the temperature during appellant's test was 34.3 degrees Celsius, within the acceptable range. The Intoxilyzer machine prints a report, which the operator signs. Here, Skelton signed the report. The only physical signs of intoxication she observed were appellant's red eyes and that he appeared drowsy. She testified that she did not video record the test because Tomeo informed her that appellant's consent to the test was captured on tape at the scene, so he did not need a recording, just the test.

Tomeo contacted the District Attorney's Office about his observations, and the results of the breathalyzer tests. The District Attorney's Office charged appellant with DWI.

Tasha Israel, a technical supervisor for the Texas Department of Public Safety, also testified for the State. Before the start of her testimony, appellant's counsel lodged the following objection:

> MR. JOHNSON: Judge, I would object to this person testifying. I learned over the break that she did not even work for HPD at the time, was not a technical supervisor until November of this past year, 2014.
>
> THE COURT: That's all right. She's still custodian of records; and she still can testify as to what occurred, based off the records. Breath, you can; blood, you can't.

5

MR. JOHNSON: Okay. We're going to object to her testimony --

THE COURT: Okay.

MR. JOHNSON: -- as not being -- under the Confrontation Clause to the United States Constitution --

THE COURT: Okay.

MR. JOHNSON: -- in that she did not work at HPD; did not -- was not a custodian of records at that time; she was not involved in the testing of this breath; was not responsible for the solution making; was not responsible for the upkeep of the records; and for those reasons, we're going to object to her testimony.

THE COURT: Okay. Overruled. . . . I'll give you that running objection.

Israel explained that a technical supervisor's duties include "maintain[ing] the Intoxilyzers in our area, we make sure the operators are recertified, we are also the custodian of records for our area, and we maintain our certified reference materials." She has specialized training and a certification to maintain the Intoxilyzer 5000.

Israel testified that, based on her training and experience and her studies, an alcohol concentration of .08 is the point a person does not have the normal use of their mental or physical faculties. She explained the scientific technology and theory behind the breathalyzer machine. She also testified that the theory and procedures are validated by the scientific community as a whole. She testified that she has reviewed the records for the instrument Skelton implemented the test on, and that the technique was properly applied in this case.

6

Finally, Isreal testified that although she did not work as a technical supervisor at the time the appellant's breathalyzer test was administered, she is currently the custodian of records for the Intoxilyzer 5000 that was used. These breathalyzer result records are kept in the ordinary course of business; an employee or representative of the Breath Alcohol Testing Program made or transmitted the information in the records; it is the regular practice of HPD to make these records; the records were made at or near the time of the test, and the representative who made the entries in the records had actual knowledge of the events.

Isreal testified that these business records show that this particular machine was placed into service on November 13, 2013, and was operating as it should on that date. On December 1, 2013, the instrument was inspected again, and again indicated it was working as it should. In her opinion, it would have been in working order on November 27, 2013.

The State moved to admit appellant's breathalyzer results. Appellant objected, and the appellant's counsel took Isreal on voir dire, outside the presence of the jury, to question her about the records she reviewed. Isreal testified that the only maintenance records relevant are the 30 days before a test, the month of the test, and the 30 days after. The court overruled appellant's objections, and her testimony resumed before the jury, with the court admitting appellant's breathalyzer results into evidence.

Isreal testified that the machine that took appellant's readings had been taken out of service on August 27, 2013 because it demonstrated a "steady decline in the reference sample reading," i.e., "consistently lower than 0.08." While there is an acceptable tolerance of range of variance of 0.01—meaning that so long as the reference sample "falls between a 0.01 of that set value [of 0.08] – so as long as we're between a 0.09 and 0.07 – the test will continue" and is considered valid. Outside that tolerance reference sample, the instrument will stop the test, print an invalid test slip and no analytical data will be printed.

When the machine was taken out of service in August 2013, the source lamp was replaced, the instrument was auto-calibrated, recalibrated, and then several checks were run. After it was placed back into service on November 15, 2013, it remained in service until it was pulled again for maintenance in January 2015.

The results of appellant's breathalyzer tests were admitted through Israel's testimony and the breath test slip was admitted as an exhibit. Appellant's two breath samples reflected readings of 0.098 grams and 0.104 grams of alcohol per 0.210 liters of breath. She testified that, "based on her training and experience" and knowledge about "alcohol and how it affects the body," in her opinion a person with an alcohol concentration of 0.09 would have lost the normal use of his or her mental or physical faculties. She also testified that both of appellant's reading were over the legal limit of 0.08 in Texas.

8

She next testified that a person's blood alcohol concentration (BAC) at the time of driving can be estimated through retrograde extrapolation. This is a process of "back-estimation using facts such as time of last drink, time of last meal, the time of stop, the time of test, the concentration at the time of test; and using known elimination rates from scientific studies." It is not "an exact science," but gives an estimation. Based on the hypothetical of a last meal at 6:00 p.m., first drink around 9:00 p.m. or 10 p.m., last drink around 10:30 or 11:00 p.m., and breath test around 2:45 a.m. indicating a BAC of .09, she opined that retrograde extrapolation would place their BAC at a 1:30 a.m. drive time at 0.10 or higher at the time of driving.

## B. Jury's Verdict and Trial Court's Judgment

The jury found appellant guilty. At the punishment phase of trial, the trial court announced a sentence of four days' confinement in county jail (with credit for two days served), and a fine of $1,500.00. The court signed its judgment April 8, 2015, and appellant timely appealed.

## ISSUE ON APPEAL

Appellant advances a single issue:

The trial court abused its discretion by admitting the testimony of Tasha Israel over Appellant's objection thereby violating his rights under the Confrontation Clause.

## C. Parties' Arguments

Appellant cites the standards for the admission of scientific testimony, i.e., it must be reliable and relevant to an issue for the trier of fact to decide. *See Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). Under *Kelly*, scientific evidence must meet three criteria of reliability: (1) the underlying scientific theory must be valid, (2) the technique applying the theory must be valid, and (3) the technique must have been properly applied. *See Reynolds v. State*, 204 S.W.3d 386, 390 (Tex. Crim. App. 2006).

Appellant concedes that, [w]ith respect to the scientific analysis of a breath specimen to determine alcohol concentration, the first two criteria are met because the Legislature has already determined that the underlying science is valid and the technique applying it is valid so long as it is administered by individuals certified by, and using methods approved, by the rules of the Texas Department of Public Safety." (citing *Renyolds*, 204 S.W.3d at 390; TEX. TRANSP. CODE ANN. § 724.016(a) (West 2011)). Accordingly, appellant challenges only the trial court's

10

ruling regarding the third *Kelly* factor; "namely, whether the technique was properly applied in accordance with DPS rules on the occasion in question."

Appellant directs us to the predicate for admission of intoxilyzer test results under the third *Kelly* factor laid out in *Harrell v. State,* a pre-*Kelly* case, *i.e.,* the State must establish (1) that the machine functioned properly on the day of the test as evidenced by a reference sample having been run through it; (2) the existence of periodic supervision over the machine and operation by one who understands the scientific theory behind it; and (3) proof of the results of the test by a witness or witnesses qualified to translate and interpret such results. *Harrell v. State*, 725 S.W.2d 208, 209–10 (Tex. Crim. App. 1986). If the State lays the predicate required by *Harrell*, it also satisfies the third element of *Kelly* as it applies to an intoxilyzer test result. *Henderson v. State*, 14 S.W.3d 409, 411–12 (Tex. App.—Austin 2000, no pet.).

Appellant contends that, under two United State Supreme Court cases—*Bullcoming v. New Mexico*, ___ U.S. __, ___, 131 S. Ct. 2705, 2715–16 (2011) and *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310–11, 129 S. Ct 2527, 2532 (2009)—the trial court's allowing Isreal to testify violated appellant's rights under the Confrontation Clause of the Constitution. In *Bullcoming*, the Supreme Court held that the defendant's constitutional right of confrontation was violated when the State introduced a report containing the results of a blood test determining the

11

defendant's BAC through the testimony of an analyst who had not performed the test or signed the certification of BAC. ___ U.S. at ___, 131 S. Ct. at 2717. In *Melendez-Diaz*, the Supreme Court held that the State's introduction of affidavits prepared by non-testifying analysts averring that a substance found on defendant was cocaine violated the defendant's right of confrontation because he was unable to cross–examine the witness. 557 U.S. at 325–26, 129 S. Ct. 2540–41.

Appellant argues that allowing Isreal to testify from someone else's records that the intoxilyzer machine used to perform the breath test on appellant was operating properly is analogous to the evidence that the Supreme Court found to violate the confrontation clause in *Bullcoming* and *Melendez-Diaz*. In addition, appellant argues that allowing the testimony was not harmless given "the technical difficulties experienced by Tomeo's car camera, the jury was not able to actually verify that Appellant failed the field sobriety tests as Tomeo stated [and] at Tomeo's direction, no recorded field sobriety tests were performed once the Appellant was taken back to the station, [leaving . . . .] the only verifiable evidence regarding intoxication presented to the jury was the results of the breath test."

The State responds that Isreal's testimony in this case is much more similar to the evidence considered by the Supreme Court in *Williams v. Illinois*, ___ U.S. ___, 132 S. Ct. 2221 (2012). In that case, the Court held that there was no violation of the Confrontation Clause when an expert witness relied on a DNA

profile prepared by a third-party laboratory, which had performed the DNA testing before a suspect was identified in the criminal investigation. *Id.* at ___, 132 S. Ct. at 2243–44. The Court noted that the DNA profile report was not produced to accuse petitioner or to create evidence for use at trial; rather, its purpose was to "catch a dangerous rapist who was still at large, not to obtain evidence for use against petitioner, who was neither in custody or under suspicion at the time." *Id.* at ___, 132 S. Ct. at 2243. The State also notes that several Texas appellate courts have rejected arguments on facts similar to appellant's.

**D. Applicable Law**

The Confrontation Clause of the Sixth Amendment of the United States Constitution provides that "'[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" U.S. CONST. AMEND. VI. This "provides a simple yet unforgiving rule: the State may not introduce a testimonial hearsay statement unless (1) the declarant is unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the declarant." *Lee v. State*, 418 S.W.3d 892, 895 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (citing *Bullcoming*, ___ U.S. at ___, 131 S. Ct. at 2713; *Wood v. State*, 299 S.W.3d 200, 207 (Tex. App.—Austin 2009, pet. ref'd)).

The threshold inquiry is whether the hearsay at issue is "testimonial." *Id.* "Various formulations of th[e] core class of 'testimonial' statements exist . . . . "

*Id.* (citing *Crawford v. Washington*, 541 U.S. 36, 51, 124 S.Ct. 1354, 1364 (2004). The Court of Criminal Appeals has summarized three kinds of testimonial statements: (1) "ex parte in-court testimony or its functional equivalent," i.e., "pretrial statements that declarants would expect to be used prosecutorially;" (2) "extrajudicial statements contained in formalized testimonial materials," such as affidavits, depositions, or prior testimony; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010). Although evidentiary rulings are usually reviewed for an abuse of discretion, a statement's testimonial nature is a question of law that we review de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

A Confrontation Clause violation is constitutional error that requires reversal unless we conclude beyond a reasonable doubt that the error was harmless. *Davis v. State*, 203 S.W.3d 845, 850 (Tex. Crim. App. 2006); *see* TEX. R. APP. P. 44.2(a). The critical inquiry is not whether the evidence supported the verdict absent the erroneously admitted evidence, but rather "the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations." *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). In making this determination, we may consider a number of non-exclusive factors, including: "(1) the importance of

14

the hearsay statements to the State's case; (2) whether the hearsay evidence was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the hearsay testimony on material points; and (4) the overall strength of the prosecution's case." *Davis*, 203 S.W.3d at 852.

## E.    Analysis

We agree with the State that the trial court's admission of Israel's testimony did not violate the Confrontation Clause.  Officer Tomeo, who conducted the field sobriety tests, and Mary Skelton, who administered appellant's breathalyzer test and signed the certification, both testified at trial and were thus subject to cross-examination.  If the State had not called *Skelton* (who administered the test), but instead attempted to introduce her report through another witness, there may have been a confrontation problem under the cases upon which appellant relies.  *See Burch v. State*, 401 S.W.3d 634, 637–38 (Tex. Crim. App. 2013) ("Without having the testimony of the analyst who actually performed the tests, or at least one who observed their execution, the defendant has no way to explore the types of corruption and missteps the Confrontation Clause was designed to protect against.").  But the type of testimony Israel provided was expressly contemplated as acceptable, non-testimonial evidence not subject to the Confrontation Clause in *Melendez-Diaz*:

> [W]e do not hold, and it is not the case, that anyone whose testimony
> may be relevant in establishing the chain of custody, authenticity of

the sample, *or accuracy of the testing device*, must appear in person as part of the prosecution's case. While the dissent is correct that "[i]t is the obligation of the prosecution to establish the chain of custody," post, at 2546, this does not mean that everyone who laid hands on the evidence must be called. As stated in the dissent's own quotation, ibid., from *United States v. Lott*, 854 F.2d 244, 250 (C.A.7 1988), "gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility." It is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence; but what testimony is introduced must (if the defendant objects) be introduced live. *Additionally, documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records*. See infra, at 2550–2551, 2552.

557 U.S. at 311, n.1 (emphasis added).

While recognizing the "ongoing controversy over whether the [above-quoted] *Melendez-Diaz* footnote was a categorical limitation on the confrontation right or simply dicta," *Lara v. State*, No. 08-13-00221-CR, ___ S.W.3d ___, ___, 2015 WL 7074798, at *6 (Tex. App.—El Paso Nov. 13, 2015, no pet. h.) (citing *Boutang v. State*, 402 S.W.3d 782, 793 (Tex. App.—San Antonio 2013, pet. ref'd) (Martinez, J., dissenting from denial of reh'g en banc)), the courts of appeals have uniformly relied upon this footnote to hold that "a defendant does not have a right to confront the specific technical supervisor responsible for the breathalyzer at the time of the breath test." *Lara*, ___ S.W.3d at ___, 2015 WL 7074798, at *6; *Beard v. State*, 421 S.W.3d 676, 677–78 (Tex. App.—Waco 2014, pet. ref'd) (holding that testimony by technical supervisor who had not prepared the maintenance records of the Intoxilyzer during the month the defendant was administered a

breath test could testify "regarding the operation of the Intoxilyzer and the use of the reference sample solution" without violating the Confrontation Clause); *Alcaraz v. State*, 401 S.W.3d 277, 280 (Tex. App.—San Antonio 2013, no pet.) ("Upon admission of the breathalyzer report that demonstrated his BAC, appellant had the opportunity to confront both Deputy Lopez, the operator of the Intoxilyzer machine at the time the test was administered, and Stephens, an expert who, as senior forensic analyst, was qualified to give her opinion, based on her review of maintenance and inspection records, regarding the machine's accuracy and whether the instrument was working properly on the day appellant's test was administered"; even though Stephens was not the person in charge of maintaining the Intoxilyzer machines at the time of the breathalyzer test, her testimony did not violate defendant's right to confrontation); *Lightfoot v. State*, No. 05-12-00428-CR, 2013 WL 3871041, at *5 (Tex. App.—Dallas July 23, 2013, pet. ref'd) (mem. op.; not designated for publication) (rejecting argument that "the Confrontation Clause w[as] violated because the trial court allowed Fuller to testify regarding the alcohol breath test and whether the intoxilyzer machine was in working order and able to produce valid test results on the day in question," despite the fact that "the individual who performed the actual maintenance on the machine and repaired it when it broke down, Terry Robinson, was not called to testify"); *Settlemire v, State*, 323 S.W.3d 520, 522 (Tex. App.—Fort Worth 2010, pet. ref'd) (holding no

17

Confrontation Clause violation when "Lori Fuller, the technical supervisor in charge of the machine at the time of the trial, testified and sponsored the test results and maintenance records, [even though] Fuller was not the supervisor in charge of the machine when Settlemire was arrested"); *Hysenaj v. State*, No. 11-13-00219, 2015 WL 4733068, at *1–2 (Tex. App.—Eastland Aug. 6, 2015, no pet.) (mem. op; not designated for publication) (holding no Confrontation Clause violation in the testimony by technical supervisor "that the intoxilyzer that Officer Stafford used to administer the breath test to Appellant was in working order at the time of the test" relying on records prepared by a different, non-testifying technical supervisor); *Weber v. State*, No. 14-11-00863-CR, 2012 WL 3776362, at *4–5 (Tex. App.—Houston [14th Dist.] Aug. 30, 2012, no pet.) (mem. op.; not designated for publication) (holding no Confrontation Clause violation in allowing technical supervisor to testify that Intoxilyzer 5000 was properly calibrated and the reference sample correctly mixed, despite witnesses' reliance on other's records rather than her own work).

We overrule appellant's sole issue.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.

Publish.  TEX. R. APP. P. 47.2(b).