**Opinion issued March 8, 2022**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-20-00240-CR

———————————

**ERNEST LEWIS HALL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Case No. 1524469**

---

## MEMORANDUM OPINION

A jury convicted appellant Ernest Lewis Hall of the second-degree felony

offense of sexual assault of a child between fourteen and seventeen years of age, and

it assessed his sentence at three years' imprisonment. *See* TEX. PENAL CODE §§

22.011(a)(2)(A), (f), 12.33(a). In a single issue on appeal, Hall contends that his trial counsel provided ineffective assistance by failing to object to the admission of written statements that violated his constitutional right to confront witnesses against him. We affirm.

## Background

In 2015, fourteen-year-old K.G. ("Kim") lived with her family across the street from Hall, his wife, and their children.[1] Hall was forty-seven years old at the time. Kim's sister, J.M. ("Jane"), moved out of Kim's home and into Hall's home from January to October 2015 due to an "altercation" she had with her mother. Although Jane lived with Hall during this time, Kim initially did not know Hall very well. She met him sometime around July 2015 while walking her younger brother to the bus stop to go to school. Hall was outside of his house, and he called Kim over and told her that he "recognized" her and could see that she "liked him."

After that day, Kim noticed that Hall would watch her when she walked to the bus stop. She began seeing him more often in personal settings, such as while visiting Jane at his house. Away from others, Hall would comment on Kim's appearance and try to kiss her. He also paid for her younger brother to play football and offered to

---

[1]     In this opinion, we refer to the child complainant and her family members by pseudonyms to protect their privacy. *See* TEX. CONST. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

2

take him to football practice. Kim's parents agreed, but they asked Kim to go along. Hall made her sit in the front seat of his car and, when they were alone during the practice, began making increasingly sexual advances towards her. He showed her pornography on his cell phone and eventually progressed to having sexual intercourse with her. Kim testified that she and Hall had sexual intercourse numerous times between July and October 2015, including in her backyard at night. She also testified that Hall bought her things, like snacks and pet medicine. Hall also gave Kim his old cell phone, and he talked to her every day and sent her sexually suggestive text messages.

In October, while still living with Hall, Jane returned to her family's home one morning because her mother had agreed to drive her to school. While passing by Kim's bedroom, Jane saw the cell phone on the bed. Jane knew that Kim was not allowed to have a cell phone, so she took it with her to school. Jane went through the phone and found photographs and text messages between Hall and Kim that were "very sexual" in nature.

When Jane returned to her family's home after school, Kim was there but their parents were not. Jane confronted Kim about what she had found on the cell phone. Kim became scared and begged Jane not to tell anyone. Kim grabbed a knife, later saying that she intended to use it to commit suicide, but Jane talked her into relinquishing the knife. Not giving up, Kim ran upstairs to her second-story bedroom

and jumped out of the window, later saying that she had intended to commit suicide again. Hearing Kim's cries, Jane ran upstairs to Kim's bedroom and then back downstairs, where she found Kim lying face down on the ground badly injured. Her stepfather returned home about that time, and Jane told him to call 911.

While waiting for the police to arrive, Jane went to Hall's house and showed his wife what she had found on the cell phone. After the police arrived, Jane returned home and reported the contents of the phone to the police. Jane did not return to live with Hall after that day.

An ambulance took Kim to the hospital, where she was treated for a broken heel bone. She gave a statement to the police about Hall's conduct. She later met Houston Police Department ("HPD") Officer Calandra Broussard, who was assigned to investigate Kim's sexual abuse allegations.

Broussard scheduled a forensic interview and examination of Kim at the Children's Assessment Center ("CAC") and accompanied her there.[2] Broussard submitted questions to the CAC to ask Kim during the interview. Broussard also observed the interview from a monitor in a separate room, and she had an opportunity to question Kim herself. Marcella Donaruma, M.D., examined Kim and issued a report (the "CAC report"), which included a narrative of Kim's sexual

_____

[2]     Broussard testified that a "forensic interview is an interview done by an interviewer that's specializing [in] questioning children that experience trauma."

4

assault allegations and Dr. Donaruma's examination findings. In a section entitled "Impressions and Plans," Dr. Donaruma commented that her examination of Kim was "consistent with [Kim's] history of penile-vaginal contact."

Kim testified at trial, and Hall cross-examined her. The CAC report was admitted into evidence. A State's witness, HPD Officer Susan McAllister, read Kim's narrative statement in the CAC report to the jury.[3] Defense counsel did not object. Dr. Donaruma did not testify. Her findings in the admitted CAC report were not read to the jury.

The jury found Hall guilty of the offense of sexual assault of a child and sentenced him to three years' confinement. *See id.* § 12.33(a). The trial court entered a judgment of conviction and certified Hall's right of appeal. *See* TEX. R. APP. P. 25.2(a)(2). This appeal followed.

## Ineffective Assistance of Counsel

In his sole issue on appeal, Hall contends that his trial counsel provided ineffective assistance by not objecting to the admission of Kim's and Dr. Donaruma's statements contained in the CAC report. He argues that admission of these statements violated his right under the Confrontation Clause to confront witnesses against him.

---

[3] During the investigation, Broussard transferred departments and McAllister assumed the investigation into Hall's conduct from Broussard.

5

## A. Right to Effective Assistance of Counsel

The Sixth Amendment of the United States Constitution and Article I, section 10, of the Texas Constitution guarantee criminal defendants the right to reasonably effective assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). The right to effective assistance of counsel requires "objectively reasonable representation," not "errorless counsel." *Lopez*, 343 S.W.3d at 142.

To establish that trial counsel provided ineffective assistance, a criminal defendant bears the burden to demonstrate by a preponderance of the evidence that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Lopez*, 343 S.W.3d at 142. The defendant must prove both prongs on appeal before an appellate court will find that trial counsel's representation was ineffective. *Strickland*, 466 U.S. at 687; *Lopez*, 343 S.W.3d at 142.

To satisfy the first prong, the appellant must show that his trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Lopez*, 343 S.W.3d at 142. To demonstrate prejudice under the second prong, the appellant must show a reasonable probability exists that the result of the proceeding would have been different without counsel's unprofessional errors. *Strickland*, 466 U.S. at 694; *Lopez*, 343 S.W.3d at

6

142. A reasonable probability is one sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Lopez*, 343 S.W.3d at 142.

Our review of trial counsel's performance is "highly deferential." *Strickland*, 466 U.S. at 689; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Courts "indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance[,]" and an appellant must overcome the presumption that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *see Lopez*, 343 S.W.3d at 142–43.

For an appellate court to find that trial counsel was ineffective, "counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Lopez*, 343 S.W.3d at 142. "It is not sufficient that [an] appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Id.* at 142–43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)).

In most cases, the record on direct appeal is undeveloped and thus inadequate to show that trial counsel was not effective.[4] *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *see Thompson v. State*, 9 S.W.3d 808, 813 (Tex.

---

[4]     Claims of ineffective assistance of counsel rejected on direct appeal for "lack of adequate information may be reconsidered on an application for a writ of habeas corpus." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

Crim. App. 1999) ("A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal."). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). When trial counsel is not provided an opportunity to explain his actions, we will not find that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Goodspeed*, 187 S.W.3d at 392).

## B. Right to Confront Witnesses

The Sixth Amendment also guarantees a criminal defendant the right "to be confronted with the witnesses against him[.]" U.S. CONST. amend. VI; *see Crawford v. Washington*, 541 U.S. 36, 42 (2004) (stating that Confrontation Clause applies to both federal and state prosecutions); *see also* TEX. CONST. art. I, § 10 (providing that criminal defendant "shall be confronted by the witnesses against him"). "In accordance with this constitutional right, out-of-court statements offered against the accused that are 'testimonial' in nature are objectionable unless the prosecution can show that the out-of-court declarant is presently unavailable to testify in court and the accused had a prior opportunity to cross-examine him." *Langham v. State*, 305 S.W.3d 568, 575–76 (Tex. Crim. App. 2010); *see* TEX. R. EVID. 804(b)(1)(B) (providing that former trial or hearing testimony, when offered in criminal case, is

8

not excluded by hearsay rule if declarant is unavailable as witness and opposing party had opportunity to develop testimony by examination).

The threshold issue in a Confrontation Clause inquiry is whether the challenged out-of-court statement is testimonial. *Langham*, 305 S.W.3d at 576; *Trigo v. State*, 485 S.W.3d 603, 610 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). In determining this threshold issue, reviewing courts consider whether "the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Langham*, 305 S.W.3d at 576 (quoting *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008)). The "primary purpose" is "the 'first in importance' among multiple, potentially competing purposes" for creating the records. *Id.* at 579. The United States Supreme Court has identified three types of out-of-court statements that comprise a "core class of 'testimonial' statements":

(1) "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially";

(2) "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; and

(3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]"

*Crawford*, 541 U.S. at 51–52 (citations omitted).

9

Medical reports created for treatment purposes generally are non-testimonial in nature and, therefore, are not subject to Confrontation Clause constraints. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2 (2009) (distinguishing cases involving "medical reports created for treatment purposes, which would not be testimonial"); *Murray v. State*, 597 S.W.3d 964, 974 (Tex. App.—Austin 2020, pet. ref'd) (concluding that statements in SANE exam report are non-testimonial when primary purpose of making statement was for medical treatment). In contrast, forensic laboratory reports prepared in connection with criminal investigations or prosecutions generally are considered testimonial. *See Bullcoming v. New Mexico*, 564 U.S. 647, 657–59 (2011) (recognizing that forensic laboratory report certifying blood-alcohol content of defendant's blood sample in DWI case was testimonial); *Melendez-Diaz*, 557 U.S. at 310–11 (holding that forensic analysis reports certifying that cocaine was seized from defendant were testimonial).

## C.     Analysis

Hall argues that his rights under the Confrontation Clause were violated by the admission of Kim's and Dr. Donaruma's statements in the CAC report, and he further argues that his right to effective assistance of counsel was violated by defense counsel's failure to object to the admission of this evidence. Hall concedes that notes from sexual assault examinations taken for the purpose of providing medical treatment are generally considered non-testimonial and not subject to the

10

Confrontation Clause. *See Murray*, 597 S.W.3d at 974. But he argues that the State did not meet its burden to establish that the CAC report was created for the purpose of providing medical treatment to Kim. Hall argues that Dr. Donaruma, the report's author, did not testify at trial and no evidence showed the purpose of the report. Hall argues that the admission of these statements violated his right to confront witnesses against him, and his counsel's failure to object to their admission constituted ineffective assistance of counsel.

The State responds that the CAC report was created for the purpose of providing medical treatment and was therefore non-testimonial and admissible under the Confrontation Clause. The State argues that Hall only identifies Dr. Donaruma's statement as prejudicial, but he does not identify Kim's narrative statements as prejudicial. It argues that a reasonable defense attorney would not have objected to the admission of Dr. Donaruma's statement because it was not read to the jury and an objection by defense counsel would have resulted in the State calling her to provide live testimony. The State therefore contends that it was sound trial strategy to not object.

At trial, Dr. Donaruma, who created the CAC report, did not testify. The State introduced the report through Officer Broussard, the initial criminal investigator of Kim's sexual assault allegations. Broussard testified that she scheduled Kim's examination, accompanied her to the CAC, submitted questions to Dr. Donaruma to

11

ask her during the interview, and observed the forensic interview. Broussard did not, however, testify about the contents of the report.

Dr. Donaruma's statements in the report were never referenced during trial. But Kim's statements in the report were read to the jury by one of the State's witnesses, Officer McAllister. Defense counsel did not object either to the admission of the report or to McAllister's reading of Kim's statements to the jury. *See Melendez-Diaz*, 557 U.S. at 313 n.3 (stating that defendant can waive right to confrontation by not objecting on this ground); *Scott v. State*, 555 S.W.3d 116, 126 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (same).

### 1. Kim's Statements

On appeal, Hall challenges both Kim's statements and Dr. Donaruma's statements in the CAC report. Kim testified at trial and was cross-examined by Hall. "[W]hen the declarant appears for cross-examination at trial, the *Confrontation Clause* places no constraints at all on the use of his prior testimonial statements." *Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011) (quoting *Crawford*, 541 U.S. at 59 n.9). Because Kim appeared for cross-examination at trial, the Confrontation Clause does not bar admission of her statements in the CAC report. *See id.* Therefore, Hall cannot establish that the trial court would have erred in overruling any objection to Kim's statements on this ground. *See Prine v. State*, 537 S.W.3d 113, 117–18 (Tex. Crim. App. 2017) (stating that failure to object will not

12

support ineffective assistance claim unless trial court would have erred in overruling objection).

### 2. Dr. Donaruma's Statements

Dr. Donaruma, however, did not testify at trial. We therefore turn to whether her statements in the CAC report were testimonial in nature such that the Confrontation Clause applied to bar admission of her prior statements. *See Woodall*, 336 S.W.3d at 642; *Trigo*, 485 S.W.3d at 610 (stating threshold issue in Confrontation Clause inquiry is whether challenged out-of-court statement is testimonial).

As the parties agree, medical reports created for treatment purposes are generally non-testimonial and not subject to the Confrontation Clause. *See Murray*, 597 S.W.3d at 974. However, the record on appeal is unclear whether the CAC report was created for the purpose of providing medical treatment, and therefore whether the statements in it are testimonial in nature.[5] *See Prine*, 537 S.W.3d at 117–18 (stating that failure to object will not support ineffective assistance claim unless trial

---

[5] Hall argues that the State did not meet its burden to prove that the statements were non-testimonial and thus admissible under the Confrontation Clause. However, the State does not bear any such burden until a defendant objects to evidence on Confrontation Clause grounds. *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008) ("Once appellant objected to the admission of the notes under *Crawford*, the burden shifted to the State, as the proponent of that evidence, to establish that it was admissible under *Crawford*."). Because defense counsel did not object, the State was not required to establish the admissibility of the statements prior to introducing them into evidence.

13

court would have erred in overruling objection); *see also Lopez*, 343 S.W.3d at 142 (stating that "counsel's deficiency must be affirmatively demonstrated in the trial record").

On one hand, the report was created by a medical doctor, Dr. Donaruma, and it states that the "Reason For Visit" is a "Sexual Abuse Exam." The report includes Kim's statement about the sexual abuse, Dr. Donaruma's examination of Kim, and laboratory and diagnostic reports showing that Kim tested negative for sexually transmitted diseases. The report also includes a section entitled "Impressions and Plans" in which Dr. Donaruma commented: "A transection of the hymen is indicative of blunt force penetrating trauma to the vagina. This is consistent with [Kim's] history of penile-vaginal contact." These parts of the report suggest that the report was created for treatment purposes. *See Melendez-Diaz*, 557 U.S. at 312 n.2; *Murray*, 597 S.W.3d at 974.

But neither the report itself nor any other record evidence states the purpose for creating the report or even the purpose of the CAC. Broussard testified that a "forensic interview is an interview done by an interviewer that's specializing [in] questioning children that experience trauma," and McAllister referred to the CAC as "our Children's Assessment Center medical clinic." But this does not show that the primary purpose of the CAC report was to provide medical treatment rather than to document the physical effects of Hall's conduct to aid in his criminal investigation

14

and eventual prosecution. *See Langham*, 305 S.W.3d at 576 (stating that reviewing courts consider whether surrounding circumstances objectively indicate that primary purpose of interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution); *Melendez-Diaz*, 557 U.S. at 312 n.2 (distinguishing medical reports created for treatment purposes, which are not generally considered testimonial).

Furthermore, the report itself indicates that it may have been prepared in connection with Hall's investigation and prosecution. For example, it references Officer Broussard and HPD as the agency with law enforcement jurisdiction. It states that the interview and examination occurred at the end of October 2015, one month after Hall's sexual assault of Kim ended. Although a medical doctor conducted the interview and examination and created the CAC report, Officer Broussard scheduled the interview and examination, accompanied Kim to the CAC, submitted questions to Dr. Donaruma to ask during the interview, observed the interview, and had an opportunity to ask questions herself. *See Ohio v. Clark*, 576 U.S. 237, 249 (2015) ("Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers."). This evidence suggests that Dr. Donaruma's statements in the report "were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available

for use at a later trial." *See Crawford*, 541 U.S. at 51–52 (describing "core class of 'testimonial' statements"). Because the record on appeal does not clarify the primary purpose of the CAC report, we are unable to conclude that the statements in the report were testimonial and therefore objectionable under the Confrontation Clause. *See Langham*, 305 S.W.3d at 576.

But assuming without deciding that Dr. Donaruma's statements were testimonial and the trial court would have erred in overruling an objection to them, Hall has not established that defense counsel provided ineffective assistance. *See Prine*, 537 S.W.3d at 117–18. This is because the record on appeal is silent regarding defense counsel's strategy for not objecting to admission of Dr. Donaruma's statements. *See Lopez*, 343 S.W.3d at 142–43. Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (quoting *Goodspeed*, 187 S.W.3d at 392). Absent counsel's opportunity to explain the challenged conduct, we will not find that counsel's performance was deficient unless the conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Goodspeed*, 187 S.W.3d at 392). Hall did not file a motion for new trial to afford his counsel an opportunity to defend his trial strategy, and Hall does not cite to any part of the record showing an explanation by counsel.

16

As the State correctly points out, defense counsel may have determined that the best strategy was not to object to Dr. Donaruma's statements in the CAC report. *See Strickland*, 466 U.S. at 689 (stating that courts "indulge a strong presumption" that counsel's conduct was reasonable, and "scrutiny of counsel's performance must be highly deferential"); *Lopez*, 343 S.W.3d at 143 (stating that when direct evidence of counsel's deficient performance is not available, courts will "assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined"). Although the State had subpoenaed Dr. Donaruma to testify at trial, it ultimately did not call her as a witness or reference her statements during trial. Although the jury could have read these statements, there was no live testimony about them.

Had defense counsel objected to the statements, the State could have simply called Dr. Donaruma as a witness to provide live testimony and emphasize her statements contained in the report. *See Menefield*, 363 S.W.3d at 593 (stating that record was silent on defense counsel's strategy in not objecting to laboratory analyst's report that was inadmissible under Confrontation Clause, but concluding that "perhaps the State could (and with an objection would) have brought [the analyst] to the courtroom to testify, and counsel realized that cross-examining [the analyst] would not benefit his client"). Dr. Donaruma's live testimony highlighting her statements in the CAC report likely would not have benefitted Hall's defense. *See id.* Thus, defense counsel could have reasonably concluded that the best trial

17

strategy was not to object to the arguably inadmissible statements and minimize any impact the statements had on the jury. *See Lopez*, 343 S.W.3d at 143 ("[W]e will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined.").

For these same reasons, the record on appeal does not demonstrate a reasonable probability that, but for defense counsel's failure to object to the statements in the CAC report, the jury would have acquitted Hall of sexual assault of a child. *See Strickland*, 466 U.S. at 694; *Lopez*, 343 S.W.3d at 142. Our confidence in the outcome is not undermined by counsel's failure to object to admission of the statements. *See Strickland*, 466 U.S. at 694; *Lopez*, 343 S.W.3d at 142.

Hall did not meet his burden on the record before us to overcome the presumption that his counsel's performance fell within the wide range of reasonable professional assistance that might be considered sound trial strategy. *See Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142–43. The record on appeal does not affirmatively demonstrate counsel's deficiency, and the challenged conduct was not so outrageous that no competent attorney would have engaged in it. *See Menefield*, 363 S.W.3d at 593; *Lopez*, 343 S.W.3d at 142–43. Nor did Hall meet his burden on the record evidence to establish that his counsel's performance prejudiced his defense. *See Strickland*, 466 U.S. at 687. We therefore conclude that Hall has not

18

met his burden to establish that his trial counsel provided ineffective assistance. *See id.*; *Lopez*, 343 S.W.3d at 142.

We overrule Hall's sole issue on appeal.

## Conclusion

We affirm the judgment of the trial court.

April L. Farris
Justice

Panel consists of Justices Kelly, Hightower, and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).